GRODHAUS et al., Appellees,

v.

BURSON, Appellant.

[Cite as *Grodhaus v. Burson* (1991), 71 Ohio App.3d 477.]

Court of Appeals of Ohio,
Franklin County.

No. 90AP-748.

Decided March 21, 1991.

478

*Philip C. Stanger,* for appellees.

*Kelly M. Morgan* and *Michael J. Petrucci,* for appellant.

McCORMAC, Judge.

Raymond and Terri Grodhaus, plaintiffs-appellees, commenced an action in the Franklin County Court of Common Pleas, seeking compensatory and punitive damages and attorney fees from Will Burson, defendant-appellant, as a result of alleged fraud on the part of appellant in inducing appellees to enter into a purchase agreement of a house that appellant represented to appellees was owned by him. They alleged that they were to lease the house with an option to purchase it and that, because of willfully false misrepresentations, they made substantial improvements on the property until some months later they discovered that the property was not owned by appellant.

Appellant failed to answer the complaint and the court entered an order of default against appellant on the question of liability and scheduled the case for a hearing on damages.

Both parties were represented by attorneys at the damage hearing before a referee. The referee rendered a report finding that, both because of the default and by virtue of the evidence adduced at the hearing, appellant was liable for fraudulent misrepresentations and found compensatory damages of $10,661, punitive damages of $11,000 and, at a later hearing, attorney fees of $7,233 based upon a contingent fee contract for one-third of the recovery.

The trial court overruled objections to the referee's report and entered judgment accordingly.

Appellant appeals, asserting the following assignments of error:

"I. The expenditure of $5,569.05 for cleaning and repairs was not the consequence of fraud, and the court erred in awarding damages for such expenditures.

"II. The court erred in finding that appellees sustained damages for loss of bargain.

"III. The court erred in determining that appellees were entitled to punitive damages.

"IV. The court erred in awarding attorney fees to appellees."

■ The first issue is whether there was proof of fraud of the nature that would support an award of punitive damages and attorney fees. R.C. 2315.-21(B) and (C) mandate that punitive damages not be awarded unless appellees establish by clear and convincing evidence that the wrongdoing of appellant demonstrated "malice, aggravated or egregious fraud" which results in actual damages. We find that there was proof of such fraud. That kind of fraud

was alleged in the complaint to which appellant defaulted. The hearing was set to determine damages only and not to determine fraud. However, even if the admission by default of liability was held not to constitute proof of the type of fraud necessary to support punitive damages and attorney fees, there was sufficient evidence adduced at the hearing to support a finding of that type of fraud.

Appellant had formerly been a real estate broker who reluctantly admitted that his license had been revoked by the real estate board shortly before this transaction took place. He also admitted that his licenses had been suspended on two previous times during his twenty-plus year career in that field. Appellant's testimony at the damage hearing was found not to be credible and we have no difficulty upholding that finding. Looking at the testimony from appellees' standpoint, appellees entered into a real estate purchase contract drawn up by appellant to purchase the property known as 1218 Beechwood Road, Columbus, Ohio, with buyer to rent for $500 a month with an option to purchase for $49,900, with possession "upon approval and signing lease and paying deposit and 1st mo. rent." The house was in very poor condition when appellees looked at it with appellant in April 1988. However, they agreed to sign the contract and spent the first two months repairing the property based upon appellant's assurance that it was their property after signing the aforesaid purchase contract; after two months without objection or further requests by appellant, they moved into the property. Actually appellant never owned the property, although, according to appellees, he represented that he did. Appellant had successfully bid the property on April 8, 1988 at a Franklin County sheriff's sale. The property had been owned by a person named Chin. Although appellant paid a $1,000 deposit at the bid process, he never completed the purchase and did not pay the balance within thirty days as required. Months later in October 1988, the property was again sold at a foreclosure sale and purchased by another person. The first notice that appellees had that appellant did not own the property was when the new owner placed a letter on their door accusing them, to their shock, of being "squatters."

Appellant collected the $500–a–month rent payments from appellees during the months that they lived in the property until October when the new owner confronted them. Appellant alleged that he collected the rent under an agreement to manage the property for Chin. Appellant never informed appellees that he would be unable to complete the sale of the property to them, although appellees had made many of the improvements after the thirty-day period for the completion of his bid, at the first Franklin County sheriff's sale, had expired. Appellant never drew up a lease agreement or

asked for a deposit, although he now contends that appellees had a unilateral obligation to initiate these procedures.

The successful bidder at the second sheriff's sale continued to rent the property to appellees at $500 a month and offered to sell the property to them at the same purchase price of $49,900, but appellees were unable to obtain financing. Appellees alleged that appellant had promised to enter into the lease agreement with them for two years until their credit could be established to obtain financing since they had taken bankruptcy recently.

The evidence was sufficient to support a finding of egregious fraud on the part of appellant. "Egregious" is defined by Webster as conspicuous for bad quality and taste. The fraud herein was of that nature. For whatever reason, appellant led appellees into investing substantial money into a house based on misrepresentations that were false. With such a finding, punitive damages and attorney fees are proper and authorized. The appropriate amounts of punitive damages and attorney fees will be discussed more fully later.

Appellant's third and fourth assignments of error are overruled.

■ The first assignment of error relates to the award of $5,569.05 for the cost of repairs and improvements by appellees on the property. These damages were properly allowable by virtue of the fact that appellees made these improvements in reliance upon the statement of appellant that the house was theirs. The improvements were substantial, including a deck and other rather large items. It seems rather obvious that appellees would not have made these improvements simply to rent on a month-to-month tenancy. Thus, the damages were directly related to appellant's misrepresentation. It is no defense to these damages that appellees did not sign a lease agreement since one was never tendered to them. Whether appellant was an agent for Chin in the management of the property is also immaterial, since that was not disclosed to appellees, who were entitled to rely upon the statement that appellant was able to produce good title to the property at the proper time.

Appellant's first assignment of error is overruled.

■ Appellant secondly contends that the $5,100 the trial court ordered for loss of bargain constituted a duplication of the damages awarded for improvements to the property and, thus, allowed a double recovery to appellees. This argument is well taken. While the second purchaser was able to sell the property for $55,000, he sold the property with the $5,600 in improvements that appellees had made on the property. Appellees described the property as being in good condition at that time and in terrible condition at the time that they entered into the contract for purchase of the property at $49,900.

Obviously, the $5,600 that had been spent on the property enhanced the value of the property. Thus, it was a duplication of damages to allow an additional $5,100 for loss of bargain.

Appellant's second assignment of error is sustained.

■ The trial court had no evidence concerning appellant's financial worth. The only basis for punitive damages was the conduct and the amount of compensatory damages. It appears that the trial court decided that punitive damages should be approximately the same amount as compensatory damages, ordinarily a proper way in which to award punitive damages, particularly when those damages are of a reasonable amount. Since we are reducing compensatory damages from $11,569 to $5,569, punitive damages to be consistent with that award should be reduced to $6,000, making a total award of compensatory and punitive damages of $11,569.

Attorney fees were calculated based upon the one-third written contingent fee contract with appellees' attorney. Thus, attorney fees were set at one-third the amount of the trial court judgment. Since the trial court judgment has been reduced, the one-third attorney fee award is reduced accordingly. One-third of $11,569 equals $3,857. Thus, attorney fees are allowed in the sum of $3,857.

Appellant's first, third, and fourth assignments of error are overruled, and appellant's second assignment of error is sustained. The judgment of the trial court is affirmed as modified. The case is remanded to the trial court to enter judgment in the amount of $5,569 for compensatory damages, $6,000 for punitive damages, and $3,857 for attorney fees, plus costs.

*Judgment affirmed as modified*
*and cause remanded*
*with instructions.*

PEGGY BRYANT and HOOPER, JJ., concur.

JAMES J. HOOPER, J., retired, of the Miami County Court of Common Pleas, sitting by assignment.