JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Plaintiff-appellant, Mary DeCapua, appeals the trial court's decision denying her motion for a new trial. Finding no merit to the appeal, we affirm.
 {¶ 2} Defendant-appellee, Alexander Rychlik, rear-ended DeCapua in a motor vehicle accident. DeCapua subsequently brought a negligence action against Rychlik, seeking to recover the costs she incurred in medical expenses as well as pain and suffering. The parties stipulated to liability but disputed the extent of damages. The case proceeded to a jury trial where the following evidence was presented.
 {¶ 3} DeCapua testified that, on June 6, 2005, she was traveling along I-90 when she encountered a construction zone, resulting in the traffic lanes narrowing to one lane. She slowed to a near stop when Rychlik rear-ended her vehicle. A police officer on the scene immediately responded and asked DeCapua if she needed assistance. DeCapua, who was 61 years old at the time of the car accident, refused medical treatment and drove home. The following day, she left for California by train to visit her son. DeCapua testified that she started experiencing pain in her neck and back on the train ride, that the pain interfered with her trip, and the back pain continued even after her return.
 {¶ 4} Approximately three weeks after the accident, DeCapua began receiving chiropractic treatment from Dr. Philip Barry. Although DeCapua *Page 4 
experienced some improvement through her sessions with Dr. Barry, she testified that she still experienced on-going pain in her back, which she had never previously experienced prior to the accident.
 {¶ 5} Approximately six months after completing her regular chiropractic treatment with Dr. Barry, DeCapua subsequently sought additional treatment from a medical doctor and an orthopaedic specialist, who referred her to physical therapy.
 {¶ 6} On cross-examination, DeCapua acknowledged that she never told Dr. Barry about the two and a half day train ride (each way) she took following the accident. She further admitted that she did not have a "sleeper" car on the train.
 {¶ 7} DeCapua, who is a self-employed business owner of a consignment shop, also testified that she continued to operate her shop five days a week after the accident, but that she closed early "many times" because of discomfort. She further acknowledged that her job entailed a considerable amount of standing and "[a] lot of lifting."
 {¶ 8} DeCapua's son and neighbor also testified on her behalf at trial. They both testified as to how her lifestyle drastically changed since the accident, resulting in her being less active, more irritable, and impatient because of the pain related to the accident. Her son testified that she can no longer lift her *Page 5 
grandchildren, and her elderly neighbor testified that DeCapua "cannot sit for very long" and that "she no longer works in my yard."
 {¶ 9} Dr. Barry testified by video deposition. He testified that the initial examination and x-rays of DeCapua revealed that she had "a pre-existing degenerative condition in her lumbar spine" resulting in mild scoliosis, osteorarthritic (arthritis to the joints), and osteophytes at L3-4. He further stated that DeCapua's MRI revealed "a mild bulging of the disc at L4-5," on her right side. Dr. Barry explained that a degenerative condition, such as DeCapua's, meant that there is a narrowing of space between joints where calcium forms, resulting in greater pressure to the nerve area, which triggers pain.
 {¶ 10} He further opined, to a reasonable degree of medical certainty, that DeCapua suffered a strain/sprain of the muscles as a result of the motor vehicle accident. He explained that DeCapua experienced a "whiplash-type of injury." According to Dr. Barry, the sprain/strain diagnosis is a universal diagnosis which is used in a case like DeCapua's involving a "whiplash of the spine."
 {¶ 11} Dr. Barry further testified that by October 2005, DeCapua was responding well to treatment but complaining of "a consistent pain on the right side of her lumbar spine," which would periodically radiate into her leg. Dr. Barry suspected a pinched nerve and recommended that DeCapua see an *Page 6 
orthopaedic doctor and obtain an MRI. According to Dr. Barry, the motor vehicle accident aggravated DeCapua's pre-existing conditions, and absent the motor vehicle accident, she would not be in the pain that she currently experiences.
 {¶ 12} On cross-examination, Dr. Barry acknowledged that his diagnosis and opinion of causation relied in part on the medical history provided by DeCapua, namely, her report of having no pain in her lower back prior to the accident. He also testified that in October of 2005, when DeCapua essentially stopped her regular chiropractic treatment, he performed range of motion tests to evaluate her lower lumbar spine and determined that "the range of motion of her lumbar spine at that time was normal." He further acknowledged that her pre-existing degenerative condition could not have been caused by a motor vehicle accident. Instead, the degeneration in DeCapua's spine, as well as the growth of the osteophytes, had to have occurred over time. Dr. Barry further opined that a sprain/strain typically takes three months to heal unless preexisting degenerative conditions exist.
 {¶ 13} At trial, DeCapua presented medical bills totaling $6,947.63, of which $1,775 comprised the amount incurred in connection with the treatment she received with Dr. Barry.
 {¶ 14} The defense submitted the report of Dr. Duret Smith, an orthopaedic surgeon, who reviewed DeCapua's medical records and opined that "[a]ccording *Page 7 
to the evaluations by the orthopaedic and spine surgeon, she had NO disability directly or proximately related to the MVA of 6/6/05." Dr. Smith acknowledged that the records revealed that DeCapua sustained a "lumbar strain/sprain and aggravation of her degenerative arthritis in the MVA of 6/6/05." The report further indicated that a "portion" of DeCapua's "complaints, pain, and treatment were related to the aggravation of her pre-existing degenerative arthritis of her lumbar spine."
 {¶ 15} The jury found in DeCapua's favor and awarded her $3,000 — an amount less than her combined total of submitted medical bills. DeCapua subsequently moved for a new trial/judgment notwithstanding the verdict and/or additur, which the trial court denied. She appeals this decision, raising the following two assignments of error:
 {¶ 16} "[I.] The trial court abused its discretion when it failed to grant appellant's motion for a new trial/judgment notwithstanding the verdict/additur when the jury's award was against the manifest weight of the evidence.
 {¶ 17} "[II.] Ohio case law mandates that the jury decision in the pending controversy be modified."
 Motion for a New Trial {¶ 18} In her first assignment of error, DeCapua argues that the trial court should have granted her motion for a new trial because the jury's verdict failed *Page 8 
to consider damages that were proven by "uncontroverted expert testimony," and, therefore, it was against the manifest weight of the evidence.[1]
 {¶ 19} "Civ. R. 59(A)(6) authorizes the trial court to vacate a judgment and order a new trial on a finding that the verdict on which the judgment was entered `is not sustained by the weight of the evidence.' When that claim is made, the court must review the evidence and pass in a limited way on the credibility of the witnesses. (Internal citations omitted.) It must appear to the court that a manifest injustice has been done and that the verdict is against the manifest weight of the evidence. Rohde v. Farmer (1970), 23 Ohio St.2d 82. *** A verdict is not against the manifest weight of the evidence merely because the judge would have decided the case differently. (Internal citations omitted.)" Bedard v. Gardner, 2d Dist. No. 20430,2005-Ohio-4196, ¶ 23-24.
 {¶ 20} The decision to grant or deny a motion for new trial rests in the sound discretion of the trial court, and will not be reversed on appeal absent an abuse of discretion. Sharp v. Norfolk W. Ry.Co., 72 Ohio St.3d 307, 312, 1995-Ohio-224. An abuse of discretion is more than an error in judgment or a mistake of law; it connotes that the court's attitude is unreasonable, arbitrary, or *Page 9 
unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. Further, a reviewing court will not reverse a judgment as being against the manifest weight of the evidence when the judgment is supported by some competent, credible evidence going to all the essential elements of the case. C.E. Morris Co. v. Foley Constr. Co. (1978),54 Ohio St.2d 279, 280.
 {¶ 21} The crux of DeCapua's argument is that the jury only awarded her $3,000 despite her submission of $6,947.63 in medical bills and her request for pain and suffering. She argues that Rychlik failed to present any expert testimony to refute Dr. Barry's testimony that her damages were proximately caused by the accident and that her medical expenses were necessary and reasonable. Rychlik counters that DeCapua's evidence was not uncontroverted and that the jury verdict was not so overwhelmingly disproportionate to warrant a new trial. He further argues that even if Dr. Barry's testimony was unrefuted, the jury was still free to find his testimony not credible. We agree.
 {¶ 22} The assessment of damages lies "so thoroughly within the province of the [trier of fact] that a reviewing court is not at liberty to disturb the [trier of fact's] assessment" absent an affirmative finding of passion and prejudice or a finding that the award is manifestly excessive or inadequate. Moskovitz v. Mt. Sinai Med.Ctr., 69 Ohio St.3d 638, 655, 1994-Ohio-324. A reviewing court should not find that a verdict is inadequate unless "the inadequacy of the verdict *Page 10 
is so gross as to shock the sense of justice and fairness, or the amount of the verdict cannot be reconciled with the undisputed evidence in the case, or it is apparent that the jury failed to include all the items of damages comprising a plaintiff's claim." Pearson v. Wasell (1998),131 Ohio App.3d 700, 709-710, citing Iames v. Murphy (1995),106 Ohio App.3d 627.
 {¶ 23} "It is well established that the jury, as the trier of fact, is vested with the power to judge the credibility of witnesses and to determine the weight to be afforded to the evidence presented."Croft v. State Farm Mutual Auto. Ins. Co., 3d Dist. No. 1-01-72, 2002-Ohio-113, citing Swan v. Skeen (1974), 40 Ohio App.2d 307, 308-309. A jury is free to accept or reject any or all the testimony of any witness, including testimony of an expert witness. Weidner v.Blazic (1994), 98 Ohio App.3d 321, 335. Indeed, as this court has previously noted:
 {¶ 24} "[T]he jury is not required to give any additional weight to the opinion of an expert, if any weight at all. Rather, an expert's opinion is admissible, as is any other testimony, to aid the trier of fact in arriving at a correct determination of the issues being litigated. Expert testimony is permitted to supplement the decision-making process of the fact finder, not to supplant it."Sawyer v. Duncan (Dec. 14, 2000), 8th Dist. No. 78056.
 {¶ 25} Moreover, "plaintiffs bear the burden of persuasion on all dispositive issues." Pesic v. Pezo, 8th Dist. No. 90855, 2008-Ohio-5739, ¶ 35, quoting Welch *Page 11 v. Ameritech Credit Corp., 10th Dist. No. 04AP-1123, 2006-Ohio-2528, ¶ 13. Thus, the mere fact that testimony is uncontradicted, unimpeached, and unchallenged does not require the trier of fact to accept the evidence if the trier of fact found that the testimony was not credible.See Bradley v. Cage, 9th Dist. No. 20713, 2002-Ohio-816. "The trier of facts always has the duty, in the first instance, to weigh the evidence presented, and has the right to accept or reject it." Ace Steel Balingv. Porterfield (1969), 19 Ohio St.2d 137, 138; see, also, Rogers v.Hill (1998), 124 Ohio App.3d 468, 470.
 {¶ 26} Indeed, "`simply because plaintiff's expert testified that the billings were necessitated by the accident, they are not automatically entitled to prevail on the question of necessity, even where their expert's testimony on that point is not directly controverted by defendant's evidence, so long as there appear in the record objectively discernible reasons upon which the jury could rely to reject the expert's opinion testimony.'" Walker v. Holland (1997),117 Ohio App.3d 775, 794, quoting Muncy v. Jones (Jan. 19, 1984), 10th Dist. No. 83AP-562; see, also, McBride v. Quebe, 2d Dist. No. 21310,2006-Ohio-5128.
 {¶ 27} Here, the jury obviously found that DeCapua's damages were not all proximately caused by the accident. Although DeCapua submitted nearly $7,000 in medical bills and presented Dr. Barry's testimony as to the reasonableness of *Page 12 
the bills, the jury was free to disbelieve his testimony based on other evidence in the record.
 {¶ 28} First, Dr. Barry acknowledged that he formed his opinion that the accident aggravated DeCapua's pre-existing degenerative condition based on her representation that she was completely "pain free" before the accident. The jury, however, may have found DeCapua's subjective reporting of pain not credible. Indeed, DeCapua failed to inform Dr. Barry that she had taken a two and a half day train ride immediately following the accident where she was forced to sleep in her seat. She was 61 years old at the time of the accident and testified that she had never experienced a backache in her lifetime prior to the accident. Further, despite DeCapua's complaints of pain, she testified that she only occasionally took over-the-counter pain medication. Thus, the jury may have reasonably found that DeCapua exaggerated her feelings of back pain.
 {¶ 29} Second, the jury may have attributed some of the damages to her pre-existing degenerative condition. The record is replete with evidence that DeCapua suffered from pre-existing degenerative arthritis in her lumbar spine that could not have been caused by the motor vehicle accident. Although Dr. Barry testified that the motor vehicle accident aggravated DeCapua's preexisting conditions, the jury may not have believed that the accident was the only factor. The jury may have found that the nature of DeCapua's job, which *Page 13 
entailed standing for most of the day and "a lot of lifting," or the train ride, contributed to some of the aggravation.
 {¶ 30} Finally, although DeCapua claims that the reasonableness and necessity of her medical treatment arising out of the motor vehicle accident was uncontroverted, the record demonstrates otherwise. Rychlik submitted the expert report of Dr. Smith into evidence, wherein he opined that "a portion of [DeCapua's] complaints, pain, and treatment were related to the aggravation of her pre-existing degenerative arthritis of her lumbar spine." Thus, Dr. Smith's statement does not corroborate Dr. Barry's claim that all the medical expenses were necessary and reasonably related to the motor vehicle accident.
 {¶ 31} Given this record, we cannot say that the trial court abused its discretion in denying DeCapua's motion for a new trial.[2]
 {¶ 32} Accordingly, the first assignment of error is overruled.
 Pain and Suffering *Page 14 {¶ 33} In her second assignment of error, DeCapua argues that the jury verdict must be modified because the jury failed to award for pain and suffering, despite finding that DeCapua was injured as a result of Rychlik's negligence. DeCapua argues that the jury's failure to award for pain and suffering conclusively proves that the verdict is against the manifest weight of the evidence.
 {¶ 34} In this case, however, the jury returned a general verdict. Jury interrogatories were not submitted to the jury. "Without such interrogatories, the court cannot determine from a general verdict whether the jury failed to award a specific component of damages," such as pain and suffering. Pavon v. Schick (Mar. 17, 2000), 6th Dist. No. L-99-1055; see, also, Werner v. McAbier (Jan. 13, 2000), 8th Dist. Nos. 75197 and 75233; Shepherd v. Cincinnati, 168 Ohio App.3d 444,2006-Ohio-4286 (failure to submit jury interrogatories precluded city from receiving a set-off of collateral benefits because general verdict does not reveal whether the jury awarded the amount of medical bills covered by insurance). Thus, based on the general verdict of $3,000, we cannot say that the jury did not award for pain and suffering.
 {¶ 35} Moreover, contrary to DeCapua's assertion, an award for pain and suffering is not automatic even if the plaintiff is awarded damages for medical expenses. Pesic, supra, at ¶ 37, citing Metter v.Konrad, 8th Dist. No. 85271, *Page 15 2005-Ohio-4290, ¶ 15. As this court has previously stated, "[i]t does not follow that in a matter wherein a jury awards damages for medicals *** that automatically an award for pain and suffering must follow. Evidence relative to pain and suffering in damage evaluations is within the province of the fact-finder." Baughman v. Krebs (Dec. 10, 1998), 8th Dist. No. 73832; see, also, Uhlir v. State Farm Ins. Co.,164 Ohio App.3d 71, 2005-Ohio-5545, ¶ 21 (upholding the jury's decision not to award damages for pain and suffering).
 {¶ 36} Here, the jury may have found that DeCapua's testimony regarding her pain and suffering was not credible. Although she, her son, and her neighbor testified as to how DeCapua's injuries from the accident had affected her life, there was also evidence in the record that the pain and suffering may be unrelated to the accident. If the jury found that there was no continuing injury from the underlying accident or that any pain and suffering was de minimis, it was within its province to find no compensable pain and suffering. See, e.g.,Pesic, supra, at ¶ 38; Uhlir, supra, at ¶ 25; Metter, supra, at ¶ 15;Welch, supra, at ¶ 41. Likewise, the jury may have found that DeCapua's claim of pain and suffering was not related to the underlying accident, but rather, due to her preexisting degenerative condition. Accordingly, we cannot say that the jury's damage award is against the manifest weight of the evidence.
 {¶ 37} The second assignment of error is overruled. *Page 16 
Judgment affirmed.
It is ordered that appellees recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
SEAN C. GALLAGHER, P.J., and JAMES J. SWEENEY, J., CONCUR.
[1] Within her stated assignment of error, DeCapua broadly states that the trial court also abused its discretion in denying her "judgment notwithstanding the verdict/additur." Her argument, however, focuses solely on the trial court's denial of her motion for a new trial. Thus, we summarily overrule her claim related to the denial of her motion for judgment notwithstanding the verdict/additur. See App. R. 12(A)(2) and 16(A).
[2] As for DeCapua's reliance on this court's decisions in Rieman v.Congemi, 8th Dist. No. 83187, 2004-Ohio-1269, and Tenaglia v.Russo, 8th Dist. No. 87911, 2007-Ohio-833, we find that these cases are distinguishable. DeCapua argues that these cases mandate a reversal of the trial court's decision. In both of these cases, however, this court affirmed the trial court's decision below and found that there was no abuse of discretion. Further, the facts of these cases are distinguishable. In both cases, the trial court determined that the jury award could not be reconciled with the undisputed evidence in the case. For the reasons discussed above, we find that the jury's verdict was supported by competent, credible evidence and that the trial court's decision was not unreasonable, unconscionable, or arbitrary. *Page 1