[Cite as *Favors v. Burke*, 2013-Ohio-823.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 98617

---

## DELORES FAVORS

PLAINTIFF-APPELLANT

vs.

## WILLIAM BURKE, ET AL.

DEFENDANTS-APPELLEES

---

### JUDGMENT:
### AFFIRMED IN PART, REVERSED
### IN PART AND REMANDED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-768958

**BEFORE:**  Stewart, A.J., Jones, J., and Blackmon, J.

**RELEASED AND JOURNALIZED:**  March 7, 2013

**ATTORNEY FOR APPELLANT**

Andrew S. Pollis
Milton A. Kramer Law Clinic Center
Case Western Reserve University School of Law
11075 East Boulevard
Cleveland, OH    44106


**LEGAL INTERNS FOR APPELLANT**

Jeffrey Bieszczak
Emily Grannis
Milton A. Kramer Law Clinic Center
Case Western Reserve University School of Law
11075 East Boulevard
Cleveland, OH    44106


**FOR APPELLEE**

William Burke, Pro Se
3019 Ruby Avenue
Cleveland, OH    44106

MELODY J. STEWART, A.J.:

{¶1} The court entered a default judgment in favor of plaintiff-appellant Delores Favors and against defendant-appellee William Burke on Favors's complaint that Burke violated the Ohio Consumer Sales Practices Act (the "Act") by failing to complete a home remodeling contract. After a trial on damages, the court awarded Favors actual damages of $6,050, which it trebled pursuant to R.C. 1345.09(B) for a total damage award of $18,150 plus interest. On appeal, Favors complains that the court erred by failing to award her noneconomic and punitive damages, as well as failing to award attorney fees.

{¶2} Favors's complaint alleged that Burke engaged in fraud by accepting a down payment of $6,050 to remodel and enlarge her house. She alleged that Burke began work on the project by "digging a hole in her backyard," but then abandoned the project, leaving nothing to show for her money but the unfilled hole. She further alleged that he ignored her calls and complaints and then lied to the Ohio Attorney General's office about his progress on the project.

{¶3} Although Burke was initially represented by counsel, the court allowed Burke's lawyer to withdraw before answering the complaint. The court informed Burke that he had to answer the complaint or face a default judgment. Burke did not answer the

complaint nor did he appear at the default hearing, despite having notice of the hearing. The court entered a default judgment and ordered a hearing on the issue of damages only.

## I

{¶4} Favors first argues that the court's refusal to award her noneconomic damages for her inconvenience, frustration, embarrassment, and mental distress caused by Burke's violations of the act was against the manifest weight of the evidence.

## A

{¶5} R.C. 1345.09(A) states:

(A) Where the violation was an act prohibited by section 1345.02, 1345.03, or 1345.031 of the Revised Code, the consumer may, in an individual action, rescind the transaction or recover the consumer's actual economic damages plus an amount not exceeding five thousand dollars in noneconomic damages.

{¶6} In the context of tort law, "noneconomic loss" has been defined by R.C. 2315.18(A)(4) as:

[N]onpecuniary harm that results from an injury or loss to person or property that is a subject of a tort action, including, but not limited to, pain and suffering, loss of society, consortium, companionship, care, assistance, attention, protection, advice, guidance, counsel, instruction, training, or education, disfigurement, mental anguish, and any other intangible loss.

{¶7} Although the Ohio Supreme Court has not expressly defined the scope of "noneconomic damages" allowed under R.C. 1345.09(A), it has noted that Ohio courts and federal courts interpreting comparable federal consumer protection laws have awarded noneconomic damages for inconvenience, aggravation, frustration, humiliation, and mental distress caused by violations of the act. *See Whitaker v. M.T. Automotive,*

*Inc.*, 111 Ohio St.3d 177, 2006-Ohio-5481, 855 N.E.2d 825, ¶ 21-22 (collecting cases). This interpretation is thus consistent with the general tort definition set forth in R.C. 2315.18(A)(4) and is sometimes referred to as damages for pain and suffering. *Id.* at ¶ 19.

{¶8} Noneconomic damages are not presumed even if the plaintiff establishes proof of actual economic damages. *See Uhlir v. State Farm Ins. Co.*, 164 Ohio App.3d 71, 2005-Ohio-5545, 841 N.E.2d 344, ¶ 21; *Metter v. Konrad*, 8th Dist. No. 85271, 2005-Ohio-4290, ¶ 15. "Evidence relative to pain and suffering in damages evaluations is within the province of the fact-finder." *Baughman v. Krebs*, 8th Dist. No. 73832, 1998 Ohio App. LEXIS 5925 (Dec. 10, 1998). We are not at liberty to disturb the trier of fact's assessment of damages absent an affirmative finding of passion and prejudice or a finding that the award is manifestly excessive or inadequate. *Moskovitz v. Mt. Sinai Med. Ctr.*, 69 Ohio St.3d 638, 655, 1994-Ohio-324, 635 N.E.2d 331. This is a very high legal hurdle for a plaintiff, for we have held that a damages award will not be found to be against the manifest weight of the evidence unless it is "so gross as to shock the sense of justice and fairness, cannot be reconciled with the undisputed evidence in the case, or is the result of an apparent failure by the jury to include all the items of damage making up the plaintiff's claim." *Tenaglia v. Russo*, 8th Dist. No. 87911, 2007-Ohio-833, ¶ 22, citing *Iames v. Murphy*, 106 Ohio App.3d 627, 666 N.E.2d 1147 (1st Dist.1995).

B

{¶9} Favors testified that she contracted with Burke after receiving a notice from a neighborhood development group that peeling paint on her house might be considered a housing violation. She said that she took pride in her house, but acknowledged that it had peeling paint and rotting windows. Her contract with Burke called for the installation of vinyl siding and repair of the windows, in addition to a first-floor addition to the house that would include a bathroom. Favors's evidence showed that Burke created a shallow excavation for the footprint of the addition in preparation to pour footers for the new addition, but otherwise did no other work on the house. She made numerous unsuccessful efforts to contact Burke, both directly and indirectly through her council person, the attorney general's office, and the Better Business Bureau.

{¶10} The testimony going to noneconomic damages consisted of Favors testifying that her unsuccessful attempts to resolve Burke's failure to fulfill his contract left her feeling "let down" and that she felt "a lot of anxiety and I was really depressed." She stated that she needed to "talk to somebody to try to get help for myself[,]" so she made three office visits to a psychologist. She said that the unfinished condition of Burke's renovations left her feeling "depressed" and "ashamed of my property."

C

{¶11} At the outset, we note that the court's refusal to award noneconomic damages was not necessarily against the manifest weight of the evidence solely because Burke did not appear for trial or otherwise contest Favors's testimony. In *Decapua v. Rychlik*, 8th Dist. No. 91189, 2009-Ohio-2029, we stated:

[T]he mere fact that testimony is uncontradicted, unimpeached, and unchallenged does not require the trier of fact to accept the evidence * * * (citation omitted). "The trier of facts always has the duty, in the first instance, to weigh the evidence presented, and has the right to accept or reject it." *Ace Steel Baling v. Porterfield* (1969), 19 Ohio st.2d 137, 138, 249 N.E.2d 892; see, also, *Rogers v. Hill* (1998), 124 Ohio App.3d 468, 470,706 N.E.2d 438.

*Id*. at ¶25. However, in its judgment entry, the court did not indicate that it found Favors's evidence of noneconomic damages wanting in any way, let alone to the degree necessitating a rejection of her claim. In fact, the court did not address the noneconomic damages claim, but implicitly rejected it in the court's judgment entry. We find that the court's refusal to award noneconomic damages was manifestly inadequate.

{¶12} Favors offered testimonial and documentary evidence showing that Burke's violations of the Consumer Sales Practices Act left her anxious and depressed to such a degree that she sought psychological help. *Whitaker* specifically endorsed "aggravation, frustration, and humiliation" as compensable noneconomic damages under R.C. 1345.09(A), so the court had no basis for denying damages for lack of evidence. And because Favors's evidence of noneconomic damages was uncontested, it is unclear how the court could justify rejecting her claim. In related cases, courts have found that "when a plaintiff receives damages for medical expenses but does not receive an award of damages for past pain and suffering, and where there is evidence supporting such

damages, such judgment is against the manifest weight of the evidence." *Juarez v. Osterman*, 10th Dist. No. 98AP-1221, 1999 Ohio App. LEXIS 6536 (Aug. 12, 1999). *See also Miller v. Irvin*, 49 Ohio App.3d 96, 98, 550 N.E.2d 501 (3d Dist.1988).

{¶13} The court awarded Favors damages under the Act, so it should have awarded noneconomic damages given her evidence that she suffered depression, anxiety, and frustration as a result of Burke's violations. We therefore sustain this assignment of error and remand with instructions for the court to determine the amount of noneconomic damages that Favors is entitled to receive.

## II

{¶14} In addition to her claim that Burke violated the Ohio Consumer Sales Practices Act, Favors's complaint set forth claims of fraud and civil theft. She sought punitive damages for each of those claims. The court declined to award punitive damages, finding that Favors failed to produce "enough evidence" to warrant punitive damages.

{¶15} R.C. 2315.21(C)(1) states that punitive damages cannot be recovered unless "[t]he actions or omissions of [the] defendant demonstrate malice or aggravated or egregious fraud * * *." "Actual malice, necessary for an award of punitive damages, is (1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, or (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." *Preston v. Murty*, 32 Ohio St.3d 334, 336, 512 N.E.2d 1174 (1987), syllabus. The plaintiff has the burden to prove

evidence of entitlement to punitive damages by clear and convincing evidence. R.C. 2315.21(D)(4). "Clear and convincing evidence" is "proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

{¶16} Favors offered no evidence of actual malice at the hearing — she relied on general statements in her complaint that alleged that Burke's conduct "demonstrated actual malice and/or aggravated egregious fraud." For example, Favors alleged in her complaint that Burke replied to an inquiry by the attorney general's office by lying about his progress on the job. Although a defendant's failure to answer or otherwise defend a complaint constitutes an admission of facts alleged in the complaint, *Belfance v. Resash, Inc.*, 9th Dist. Nos. 23415 and 23437, 2007-Ohio-6614, ¶ 5, those admitted facts alone are not enough to warrant the imposition of punitive damages. In *Carr v. Charter Natl. Life Ins. Co.*, 22 Ohio St.3d 11, 488 N.E.2d 199 (1986), the Supreme Court found that the evidence presented in a default judgment hearing must support the damages awarded, particularly punitive damages. *Id*. at 13. Under *Carr*, these general allegations were, without more, insufficient to support a finding by clear and convincing evidence that Burke acted with actual malice.

{¶17} Favors cites *Grodhaus v. Burson*, 71 Ohio App.3d 477, 481, 594 N.E.2d 717 (10th Dist.1991), as support for the proposition that punitive damages can be awarded

solely on the allegations of a complaint. We do not believe that *Grodhaus* stands for the proposition suggested by Favors because the facts of that case show that Burson, the party against whom punitive damages were sought, actually testified at the hearing on damages and that testimony greatly informed the decision to award punitive damages. *Id*. at 480. ("Appellant's testimony at the damage hearing was found not to be credible and we have no difficulty upholding that finding.") That testimony was viewed in conjunction with the allegations of the complaint to uphold a trial court's finding that Burson acted with malice. No such testimony was offered in this case.

{¶18} Favors also relied on her request for admissions, which were deemed admitted when Burke failed to reply to her request. *See* Civ.R. 36(A).

{¶19} "When a party fails to timely respond to requests for admissions under Civ.R. 36, the admissions become facts of record that the court must recognize." *N. Eagle, Inc. v. Kosas*, 8th Dist. No. 92358, 2009-Ohio-4042, ¶ 22, citing *Cleveland Trust Co. v. Willis*, 20 Ohio St.3d 66, 67, 485 N.E.2d 1052 (1985). But the only request for admissions that touched on Burke's malice was Request for Admission No. 21, which asked Burke to admit that "Defendant never intended to complete the work they agreed to perform in the Remodeling Contracts." Taking it as admitted that Burke "never intended to complete the work," that fact does not necessarily require a finding of malice or egregious fraud.

{¶20} A party to a contract is free to breach the contract, subject to paying damages for the breach. Farnsworth, *Contracts*, Section 12.3, at 157 (2d ed. 1998).

Indeed, this is why contract cases are not torts — for instance a party to Contract A ought to be free to breach that contract, subject to payment of damages for the breach, in order to perform Contract B if the profit earned on Contract B would exceed the loss to the non-breaching party to Contract A. Posner, *Economic Analysis of Law*, 106 (3d ed. 1986) ("[I]t is not the policy of the law to compel adherence to contracts but only to require each party to choose between performing in accordance with the contract and compensating the other party for any injury resulting from a failure to perform."). The breach of Contract A would thus not necessarily show malice against the aggrieved party to the contract. Farnsworth, Section 12.8, at 842.

{¶21} Favors's own evidence showed that Burke commenced some work, however minimal, on Favors's house by excavating in preparation for pouring a footer for the new addition. This left open the possibility that Burke undertook the project with an intent to finish it, only to abandon it later. Admittedly, Burke conceivably could have started working on the project with no intent to finish it, but under contract law he was free to breach the contract with Favors, subject to making her whole for the breach. So even with the admission that Burke did not intend to finish the project, it would be speculation to say that Burke acted with malice. With the assertion that there was no intent to finish the work being speculative, the discovery admission would not suffice to carry Favors's burden of proving actual malice by clear and convincing evidence. The court's finding that Favors did not present enough evidence to obtain punitive damages was not against the manifest weight of the evidence.

{¶22} We likewise find no basis for an award of punitive damages based on the fraud claim. To the extent that Favors's fraud claim is based on Burke making a materially false representation via his admission that he never intended to honor the remodeling contract, that fact was admitted for purposes of liability when Burke failed to answer the complaint. However, Favors's evidence at the damages hearing contradicted the allegation that Burke entered into that contract with no intention to do any work at all. By her own testimony, Burke did commence work, however minimal, on the project, so the court could find that Favors did not establish evidence sufficient to show the kind of aggravated or egregious fraud necessary for an award of punitive damages. *See, e.g., Apel v. Katz*, 83 Ohio St.3d 11, 22, 1998-Ohio-420, 697 N.E.2d 600.

III

{¶23} Finally, Favors argues that the court erred by failing to award her attorney fees under R.C. 1345.09(F)(2). She claims that the allegations of the complaint justified a finding that Burke knowingly violated the act and thus warranted the imposition of attorney fees.

{¶24} R.C. 1345.09(F)(2) permits a trial court to award reasonable attorney fees to a prevailing party for legal services reasonably performed against a person who has "knowingly committed an act or practice" that violates the act. An award of attorney fees under R.C. 1345.09(F)(2) to a prevailing party is not mandatory, but within the discretion of the trial court, subject to review only for an abuse of that discretion.

*Reagans v. Mountainhigh Coachworks, Inc.*, 117 Ohio St.3d 22, 2008-Ohio-271, 881 N.E.2d 245, ¶ 34.

**{¶25}** Given the nature of the facts admitted by virtue of Burke's failure to answer the complaint or respond to requests for admissions, the uncontradicted evidence submitted at the hearing on damages, and the apparent reasonableness of both the hourly rate and hours worked, we see nothing that would justify the court's refusal to grant attorney fees. In the face of these factors, the court did not state any reasons for denying attorney fees, nor were any reasons obvious on the record. It was thus arbitrary and unreasonable for the court to deny attorney fees.

**{¶26}** We note that the request for attorney fees was made on behalf of law students practicing as certified legal interns pursuant to Gov.Bar.R. II. Favors was represented pro bono by the Milton A. Kramer Law Clinic Center at Case Western Reserve University School of Law. The law students, under the supervision of an attorney-professor, handled the case. Gov.Bar.R. II, Section 6 states:

> A legal intern shall not ask for or receive any compensation or remuneration of any kind from a financially needy client on whose behalf services are rendered. However, the law school clinic, legal aid bureau, public defender's office, or other legal services organization may be awarded attorney fees for services rendered by the legal intern consistent with the Ohio Rules of Professional Conduct and as provided by law. A law school clinic, legal aid bureau, public defender's office, or other legal services organization, the state, or any municipal corporation may pay compensation to the legal intern.

**{¶27}** In this case, the supervisor of the legal interns submitted an affidavit in which he stated that the interns logged 156.19 hours of time working on the case. He

"conservatively" stated that the prevailing hourly rate for lawyers performing this kind of legal work would be $100 per hour. Nevertheless, the supervisor requested only $10,000 in attorney fees. All of this complied with Gov.Bar.R. II, Section 6.

{¶28} With there being no legal impediment to an award of attorney fees based on the work of the legal interns, and nothing to dispute or contradict the reasonableness of the hourly rate requested and number of hours worked, the court's refusal to grant attorney fees was unreasonable, arbitrary, and capricious. We sustain the third assignment of error and remand with instructions for the court to award attorney fees of $10,000.

{¶29} This cause is affirmed in part, reversed in part, and remanded to the trial court for further proceedings consistent with this opinion.

It is ordered that appellant and appellee share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MELODY J. STEWART, ADMINISTRATIVE JUDGE

LARRY A. JONES, SR., J., and
PATRICIA ANN BLACKMON, J., CONCUR