[Cite as *Connors v. Target Automotive Group, Inc.*, 2017-Ohio-652.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 104230**

---

## ERIN M. CONNORS

PLAINTIFF-APPELLANT
AND CROSS-APPELLEE

vs.

## TARGET AUTOMOTIVE GROUP, INC.

DEFENDANT-APPELLEE
AND CROSS-APPELLANT

---

**JUDGMENT:**
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-14-826479

**BEFORE:**   Kilbane, P.J., Stewart, J., and S. Gallagher, J.

**RELEASED AND JOURNALIZED:**   February 23, 2017

**ATTORNEYS FOR APPELLANT
CROSS-APPELLEE**

Rosemary Taft-Milby
Ronald I. Frederick
James Wertheim
Frederick & Berler L.L.C.
767 East 185th Street
Cleveland, Ohio 44119


**ATTORNEYS FOR APPELLEE
CROSS-APPELLANT**

Mary Jo Hanson
55 Public Square
Suite 1550
Cleveland, Ohio 44113

James P. Cullen
James P. Cullen L.L.C., L.P.A.
55 Public Square
Suite 1550
Cleveland, Ohio 44113

MARY EILEEN KILBANE, P.J.:

{¶1} Plaintiff-appellant, Erin Connors ("Connors"), appeals from the trial court's order denying her motion for attorney fees after she was awarded damages in a consumer sales practices action against defendant-appellee, Target Automotive Group, Inc. ("Target Automotive"). Target Automotive cross-appeals, challenging the trial court's damages award. For the reasons set forth below, we affirm the damages award, but we reverse the trial court's denial of Connors's attorney fees and remand with instructions to conduct a hearing to determine the amount of attorney fees.

{¶2} On July 2, 2013, Connors and her father Rory Connors ("Rory") went to Target Automotive in Bedford, Ohio, after seeing an advertisement for a 2011 Dodge Avenger in "excellent condition." Connors traded in her 2004 Dodge Stratus and purchased the Dodge Avenger for $14,975. Several weeks later, Connors began experiencing problems with the vehicle. She and Rory took it to North Olmsted Dodge and learned that it had been in an accident and had sustained extensive damage prior to the purchase. Connors returned the vehicle to Target Automotive for servicing but continued to experience problems with it.

{¶3} On May 7, 2014, Connors filed a complaint against Target Automotive, alleging that Target Automotive failed to disclose the prior damage to the vehicle, falsely represented that it had performed repairs, and failed to provide Connors with an itemized

list of repairs.[1]  Connors set forth claims for violations of the Consumer Sales Practices Act ("CSPA") and fraud.  The matter proceeded to trial before the court on August 25, 2015.

{¶4}  Connors testified that in June 2013, she was researching vehicles online and read an advertisement on AutoTrader for a 2011 Dodge Avenger in "excellent condition" that was for sale at Target Automotive.  Connors and Rory went to Target Automotive to see the vehicle on June 29, 2013, and dealt with Massimo Condelli ("Condelli").  The vehicle had less than 36,000 miles on it and was less than three years old.  Condelli informed them that the vehicle was still under warranty from Chrysler.  Condelli also told them that the warranty was transferable to the purchaser.  No written warranty was provided, however.  Rory asked Condelli if the vehicle had ever been in an accident. In response, Condelli told them that when the vehicle had less than 100 miles on it, a truck that was transporting it was involved in a "fender bender" but this accident did not damage the Dodge Avenger.  Condelli then gave them the third page of an AutoCheck Report listing this accident.

{¶5}  Connors and Rory test drove the car on local streets and Connors then agreed to purchase it for $14,975 plus tax.  She made a $200 down payment, traded in her 2004 Dodge Stratus for $1,498, and obtained bank financing for the balance.

---

[1]Connors also alleged that Target Automotive failed to disclose that the vehicle had been used as a rental car; however, at trial, the parties stipulated that there was no evidence to support this claim, and it was dismissed with prejudice.

{¶6} Connors further testified that a few weeks after she purchased the vehicle, she began experiencing difficulties with the car during highway travel. As a result, Connors and Rory brought the vehicle to North Olmsted Dodge for repairs. At that time, they learned that the vehicle had been in a "severe accident" that damaged the frame and other portions of the car. They observed that the undercarriage of the vehicle had dents, grass, and dirt. Technicians at North Olmsted Dodge gave Connors and Rory the following written description of the problems with the vehicle:

Vehicle has been damaged from front to rear. 1) Radiator core support. 2) Power steering cooler lines zip-tied and leaking. 3) Oil pan, trans pan, [are] dented and there [are] oil leaks[.] More diagnosis is required. 4) Frame and subframe [are] damaged in several areas. 5) Gas tank scraped but no sign of fuel leaks. * * * There is a confirmed rotational thumping noise * * *. We noted two rims show signs of damage and are possibly bent * * *. Vehicle does drift [and] lead right alignment inspection is required.

{¶7} Connors brought the car to Spitzer Dodge to obtain additional warranty information about the vehicle. Spitzer Dodge provided her with a CarFax Report indicating that the vehicle had actually been in two accidents that voided the manufacturer's warranty. Connors then returned the car to Target Automotive. Target Automotive agreed to make the repairs and kept the vehicle for a day or two to realign it. When it was returned to Connors, however, the same problems persisted.

{¶8} Connors also testified that she has paid $1,400 in repairs for the vehicle, including realignment conducted at North Olmsted Dodge (after the Target Automotive servicing) and radiator repair at a cost of $623. She also purchased a tire for the vehicle. Presently, the air conditioning system leaks water and does not work, the power steering system leaks, and the vehicle continues to shake. Connors testified that, in her opinion as the owner of the vehicle, there has been a 50 percent overall diminution in the value of the car. She also stated that if she had known that the frame of the car had been damaged, she would not have purchased the car.

{¶9} Connors next testified that during the course of litigation, she learned that Target Automotive obtained the Dodge Avenger in 2013 from Automobile Dealer Exchange Services of America ("ADESA"), an auto auction facility. Documents from this purchase demonstrate that the vehicle had considerable damage and was inoperable.

{¶10} Connors admitted that the car was sold "as is" and that "potential defects" were listed. The Buyer's Guide containing this information was not posted on the vehicle, however. Connors also admitted that she did not have it inspected prior to purchase, and that she was urged to buy an extended warranty, but she did not do so. She also admitted that she kept the car and did not ask Target Automotive to repair it after the initial alignment. At the time of trial, the car had approximately 75,000 miles on it.

{¶11} Michael Bronowski ("Bronowski") of ADESA testified that the used vehicle inspection report for the 2011 Dodge Avenger indicated that it was "a salvage sale." A "frame check" was requested so that the purchaser could check for collision damage that

may have damaged the frame. It also had "rail damage," which to Bronowski may be indicative of frame damage. The vehicle was "inoperable." Photos of the car taken at this time show it with damage.

{¶12} Condelli testified that he told Connors and Rory that the vehicle had been in a "minor accident," but he denied telling them that the collision involved the truck transporting the Dodge Avenger and not the car itself. He also claimed that he gave them the entire AutoCheck Report, and not just a small part of it listing one minor accident. Condelli also denied telling them that the vehicle was still under manufacturer's warranty, but he admitted that, in general, manufacturer warranties extend for 36,000 miles or 5 years. Condelli stated that he is paid on commission, and he was not a licensed car salesman at the time of the purchase. He completed the purchase agreement in the name of Target Automotive's owner, Maged Alzyant ("Maged"). Condelli denied seeing the vehicle in poor condition, but he admitted that Target Automotive had it for over three months before selling it.

{¶13} Maged testified that he is a certified mechanic and purchases the vehicles for Target Automotive. He purchased the 2011 Dodge Avenger for $5,530 and had it shipped from Houston. Maged denied seeing the ADESA condition report for the 2011 Dodge Avenger, but he stated that because the vehicle had been in "one minor accident," the resale price was reduced from $20,000 to $15,000. He denied that it was a "salvage sale," as he does not have a license to sell salvage vehicles. However, he acknowledged that the car needed some exterior work, including a new front bumper.

**{¶14}** Momen Alzyant ("Momen"), the general manager of Target Automotive, testified that after receiving a vehicle for resale, Target Automotive looks for "obvious damage" then completes these repairs. Target Automotive sells between 15-20 cars per month, and the business has no written policies regarding compliance with the CSPA. As to whether Target properly performed the alignment after Connors returned the car for servicing, Momen insisted that a front-end alignment was performed.

**{¶15}** William Parenti ("Parenti") of North Olmsted Dodge testified that he inspected the vehicle after Connors purchased it and observed considerable damage from the front to the rear. He confirmed the damage with his service manager, then noted problems with the radiator core support, power steering lines that were zip-tied and leaking, oil pan damage, and transmission pan damage. North Olmsted Dodge performed a "purge monitor check" that was an item identified in a recall for the vehicle, but no other warranty coverage was available. When Connors returned the car later with an alignment issue, the dealership performed a four-wheel alignment, rather than a front-end alignment because of the overall condition of the car.

**{¶16}** At the close of Connors's evidence, the trial court directed a verdict for Target Automotive on the claim for relief alleging failure to provide a list of repairs. Proceeding with the defense, Maged testified that the vehicle had minor damage when he purchased it. He was aware of one collision involving the vehicle in 2011. He inspected the vehicle and detected only a slight dent. Maged stated that additional damage occurred at the auction.

**{¶17}** Maged further testified that no misrepresentations were made to Connors and Rory at the time of purchase. When they returned a few weeks later, she and her father pointed out scratches to the undercarriage of the car, but Maged stated that most cars have such scrapes. Maged also testified that Target Automotive did perform a wheel alignment, and he acknowledged that the vehicle was a still "off a little bit."

**{¶18}** At the close of the evidence, Connors moved to amend the pleadings to add additional claims for spoliation of evidence and violation of CSPA for selling a vehicle without a license. The trial court denied the motion as to the spoliation claim, but permitted the amendment to add the additional CSPA claim. On February 17, 2016, the trial court concluded as follows:

> 3. This Court finds that Target had a duty to disclose the vehicle's prior accident history, Connors relied on Target's material statements that the vehicle was only indirectly involved in a minor accident, Target's representative knowingly made false statements with an intention to mislead Connors, and Connors was damaged directly and proximately by relying on this statement.
>
> * * *
>
> 5. Target falsely represented the vehicle was in one minor collision during transport, rather than two collisions which affected the body, mechanics, and driveability of the vehicle.
>
> * * *
>
> 7. Target engaged in a deceptive act in violation of the CSPA by expressly stating they performed an alignment, when a subsequent inspection by North Olmsted [Dodge] proved this false.
>
> * * *

9.   Defendant's failure to display a Buyer's Guide is a violation of the CSPA.

* * *

11.   Condelli admitted that he did not have a license during the year he sold the vehicle to Connors, which is a violation of the CSPA.

12.   The evidence presented at trial shows violations of the CSPA for committing fraud, false representation, falsely claiming repairs were done, failing to display the Buyer's Guide, and for selling a vehicle without a license.

13.   This court finds that Target engaged in misrepresentation and fraud at common law.

{¶19} The trial court then awarded the following damages:

1.   It is undisputed that Connors purchased the vehicle from Target for $14,975.00.

2.   Based on Connors's testimony, the actual value of the vehicle was $7,000.00, and her out-of-pocket additional repairs were $1,495.00. Therefore, Connors is entitled to $9,470.00 in economic damages.

3.   Plaintiff is awarded treble damages, which totals $28,410.00.

4.   Connors is further awarded $5,000.00 for non-economic damages.

5.   This Court declines to award punitive damages and attorney's fees.

{¶20}   It is from this order Connors appeals, challenging the trial court's denial of attorney fees.   Target Automotive cross-appeals, challenging the trial court's award of damages.

## I.   Connors's Appeal

### Assignment of Error One

The trial court abused its discretion in declining to award attorney's fees.

Assignment of Error Two

The trial court erred in failing to state its reasons for declining to award attorney's fees.

{¶21} Within these related assignments of error, Connors asserts that the trial court abused its discretion and contravened the purpose of the CSPA in refusing to award her attorney fees because she is a prevailing party, Target Automotive engaged in unconscionable conduct, and Target Automotive "knowingly made false statements with intent to deceive." Connors also complains that the court did not undertake the attorney fee award analysis, failed to state its reasons for declining to award attorney fees, and failed to hold a hearing on the issue of attorney fees. In opposition, Target Automotive argues that the trial court's damages award "provided a more than sufficient amount from which attorney fees could be recovered[.]"

{¶22} We recognize that "[t]he Consumer Sales Practices Act is a remedial law which is designed to compensate for traditional consumer remedies and so must be liberally construed pursuant to R.C. 1.11." *Einhorn v. Ford Motor Co.*, 48 Ohio St.3d 27, 29, 548 N.E.2d 933 (1990), citing Roberts & Martz, *Consumerism Comes of Age: Treble Damages and Attorney Fees in Consumer Transactions — the Ohio Consumer Sales Practices Act* (1981), 42 Ohio St. L.J. 927, 928-929.

{¶23} R.C. 1345.09(F) provides for the award of attorney fees to the prevailing party in an action brought under Ohio's CSPA. This provision states that "[t]he court may award to the prevailing party a reasonable attorney's fee limited to the work

reasonably performed, if * * * [t]he supplier has knowingly committed an act or practice that violates this chapter." *Id.* at (F)(2); *Einhorn* at syllabus. Thus, if a supplier knowingly commits an act that violates the CSPA, the trial court has the discretion to award reasonable attorney fees to a party who prevails in a suit against the supplier.

{¶24} This court's standard of review of a trial court's determination regarding the award of attorney fees under R.C. 1345.09 is abuse of discretion. *Einhorn* at 29; *Bittner v. Tri-County Toyota, Inc*., 58 Ohio St.3d 143, 146, 569 N.E.2d 464 (1991); *Favors v. Burke*, 8th Dist. Cuyahoga No. 98617, 2013-Ohio-823, ¶ 24. "'The term 'abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.'" (Citations omitted.) *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983), quoting *State v. Adams*, 62 Ohio St.2d 151, 404 N.E.2d 144 (1980).

{¶25} In stressing the importance of an award of attorney fees in CSPA cases, the Ohio Supreme Court has noted that prevailing plaintiffs benefit the community generally, and that prohibiting private attorneys from recovering for the time they expend on a consumer protection case undermines both the purpose and deterrent effect of the CSPA. *Bittner* at 144. The court explained:

> In order for private citizens to obtain redress under the Act, they first must be able to obtain adequate legal representation. Private attorneys may be unwilling to accept consumer protection cases if the dollar amount they are permitted to bill their adversary is limited by the dollar amount of the recovery, especially since monetary damages in many instances under the Act are limited to $200. An attorney may expend inordinately large amounts of time and energy pursuing a claim that reaps relatively small monetary benefits for a prevailing plaintiff. Prohibiting private attorneys

from recovering for the time they expend on a consumer protection case undermines both the purpose and deterrent effect of the Act.

*Id.*

{¶26} In the instant case, the trial court concluded that the vehicle was extensively damaged when Target Automotive obtained it from ADESA. The court further concluded that: Connors relied on Target Automotive's false statement that the vehicle was only indirectly involved in a minor accident; Target Automotive falsely represented the vehicle was in one minor collision during transport rather than two collisions, which affected the body, mechanics, and driveability of the vehicle; Target Automotive engaged in a deceptive act by stating they performed an alignment, when the vehicle was not aligned properly and could not be because of its condition; the Buyer's Guide was not displayed on the vehicle; and Condelli was not a licensed salesman at the time of the purchase. The trial court awarded Connors economic damages, noneconomic damages, and treble damages, but did not award Connors her attorney fees. The trial court did not state its reasons for denying the fees.

{¶27} In *Favors*, 8th Dist. Cuyahoga No. 98617, 2013-Ohio-823, the homeowner filed a complaint against her contractor for violating the CSPA because the contractor failed to complete Favors's home remodeling contract. The contractor accepted $6,050 as down payment for the work to be performed at Favors's home. The contractor began work by digging a hole in Favors's backyard, but then abandoned the project. Favors alleged that the contractor ignored her calls and complaints and then lied to the Ohio Attorney General's office about his progress on the project. *Id.* at ¶ 2.

{¶28} The matter proceeded to a default judgment hearing. The court entered a default judgment, awarding Favors actual damages of $6,050, which it trebled for a total damage award of $18,150 plus interest. The court did not award Favors noneconomic damages or attorney fees. *Id.* at ¶ 1, 3.

{¶29} On appeal, Favors challenged, inter alia, the trial court's denial of noneconomic damages as well as the denial of attorney fees. With regard to noneconomic damages, we found that the trial court "should have awarded noneconomic damages given [Favors's] evidence that she suffered depression, anxiety, and frustration as a result of [the contractor's] violations." *Id.* at ¶ 13.

{¶30} With regard to attorney fees, we found it was unreasonable for the trial court to deny attorney fees. *Id.* at ¶ 25. In reviewing the uncontradicted evidence submitted at the hearing on damages and the apparent reasonableness of both the hourly rate and hours worked, we found nothing that would justify the court's refusal to grant attorney fees. *Id.* We stated, "[i]n the face of these factors, the court did not state any reasons for denying attorney fees, nor were any reasons obvious on the record. It was thus arbitrary and unreasonable for the court to deny attorney fees." *Id.*

{¶31} Similarly, in the instant case, we find that it was unreasonable for the trial court to not award Connors her attorney fees. Here, the trial court determined that Target Automotive intentionally committed acts that violated the CSPA, as well as committed fraud, and awarded Connors economic damages, noneconomic damages, and treble damages. The trial court did not award attorney fees and did not state any reasons

for its denial.    In light of the foregoing and given that there is nothing in the record to contradict an award of attorney fees, we find the denial of attorney fees was unreasonable.

{¶32} Accordingly, Connors's first and second assignments of error are sustained.

## II.    Target Automotive's Cross-Appeal

## Assignment of Error

The trial court erred when it found damages of $33,410.00 in favor of [Connors].

{¶33} In support of its sole assignment of error, Target Automotive asserts that the calculation of additional repair damages of $1,495 was not supported by competent, credible evidence.    In opposition, Connors notes that she testified to the individual repairs to the vehicle so there is competent, credible evidence to support the damage award.

{¶34} An appellate court should not substitute its judgment for that of the trial court when there exists competent, credible evidence going to all the essential elements of the case.    *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984).

{¶35} In *Williams v. Am. Suzuki Motor Corp.*, 5th Dist. Stark No. 2007-CA-00172, 2008-Ohio-3123, the court concluded that the purchaser's testimony regarding repair costs and diminution of value constituted competent, credible evidence to support the damage awards.    The court stated:

> Damages need not be calculated with mathematical certainty, but cannot be based on mere speculation and conjecture.    *Allied Erecting & Dismantling Co., Inc. v. Youngstown*, 151 Ohio App.3d 16, 783 N.E.2d 523,

2002-Ohio-5179, at paragraph 64. The record contains evidence appellee made loan payments and insurance payments even though he could not use the motorcycle. He paid for an extended warranty in addition to the one-year warranty from ASCM. Appellee testified about the diminution in the motorcycle's value because of its defective condition.

*Id*. at ¶ 36.

**{¶36}** Likewise, in this matter, Connors provided competent, credible testimony, supported with documentary evidence, that established the repairs that the vehicle needed shortly after the purchase. She also provided competent, credible evidence of the diminution of the value of the vehicle.

**{¶37}** Therefore, Target Automotive's assignment of error is overruled.

**{¶38}** Accordingly, we affirm the damages award, but we reverse the trial court's denial of Connors's attorney fees and remand with instructions to conduct a hearing to determine the amount of attorney fees.

**{¶39}** Judgment is affirmed in part, reversed in part, and remanded.

It is ordered that appellant recover of appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

_____
MARY EILEEN KILBANE, PRESIDING JUDGE

MELODY J. STEWART, J., and
SEAN C. GALLAGHER, J., CONCUR