[Cite as *Kogan v. Weaver Const. and Roofing, L.L.C.*, 2026-Ohio-2323.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

TATIANA KOGAN, ET AL.,  :

      Plaintiffs-Appellees,  :

      No. 115695

      v.  :

WEAVER CONSTRUCTION AND
ROOFING, LLC, ET AL.,  :

      Defendants-Appellants.  :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** June 18, 2026

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-24-100965

---

### *Appearances:*

N.P. Weiss Law and Rachel M. Kuhn, *for appellees.*

Lipson O'Shea Legal Group and Michael J. O'Shea, *for appellants.*

DEENA R. CALABRESE, J.:

{¶ 1} Defendants-appellants Weaver Construction and Roofing, LLC, and Al Weaver ("Weaver Construction," "Al Weaver," or jointly "appellants") appeal from the trial court's final judgment in favor of plaintiffs-appellees Tatiana Kogan and Nikolay Kutsenko ("Kogan," "Kutsenko," or jointly "appellees") after the case was

tried to an advisory jury empaneled pursuant to Civ.R. 39(C)(1).  Finding no merit to the appeal, we affirm.

## I. Background Facts and Procedural History

### A. Background Facts

{¶ 2} Because appellants have provided neither a transcript of the three-day trial nor the exhibits offered and admitted at trial, we only briefly summarize the underlying facts, drawing principally from the trial court's final order.[1]  On June 28, 2022, appellees entered into a contract with Weaver Construction to replace the roof on their Pepper Pike home at an agreed cost of $22,850 for both labor and materials.  Kogan issued a check in the amount of $12,650 as a down payment before work began.  The roof was to be red metal with exposed fasteners.

{¶ 3} When the contract was executed, Weaver Construction was not registered to do business in the municipality in compliance with Pepper Pike Cod.Ord. 1448.02, which states: "No person shall engage in the business, perform any work or act in the capacity of a contractor within the City without first being duly licensed by the City to perform such work."  Pepper Pike Cod.Ord. 1448.01 defines contractor as any person or entity that "constructs, alters, repairs, adds to, subtracts from, reconstructs or remodels any building, structure or appurtenance thereto, or who or which undertakes, offers to undertake, purports to have the capacity to undertake or submits a bid to do so."

---

[1] *See Pedra Properties, LLC v. Justmann*, 2015-Ohio-5427, ¶ 1, fn. 1 (8th Dist.), summarizing the facts "based on the factual findings set forth in the trial court's . . . decision and judgment entry").

{¶ 4} Prior to the commencement of work, neither Weaver Construction nor appellees obtained a permit in accordance with Pepper Pike Cod.Ord. 1444.01, which provides in pertinent part that "[b]efore proceeding with the construction, enlargement, alteration, repair or removal of any building or other structure, a permit shall first be obtained by the owner or his or her agent from the Inspector of Buildings." Moreover, neither appellees nor Weaver Construction had secured the approval of the roofing project from Pepper Pike's Architectural Board of Review. Pepper Pike Cod.Ord. 1450.07(a) provides, in pertinent part, that "[n]o building permit shall be issued for a project which . . . erects, reconstructs . . . a building in any manner which materially affects the exterior appearance, design, or size of the building or other structure unless the Board has granted final approval."

{¶ 5} Before work commenced, Weaver Construction or its designated fabricator delivered custom red metal roofing materials to the home. On the morning that construction began, however, Pepper Pike's building inspector noticed activity, determined that no permit had been obtained, and shut down the job because of the lack of a permit and the lack of approval of the Architectural Board of Review. The inspector also learned that Weaver Construction was not registered as a contractor. According to the trial court, by that point "a significant portion of the old roof had been removed and some of the new material had been installed." (Sept. 25, 2025 judgment entry at p. 3.)

{¶ 6} Weaver Construction did subsequently register as a contractor. The Architectural Board of Review, however, refused to approve the metal roof with

exposed fasteners. "At that point, Weaver Construction left the job site and a permissible shingle roof was ultimately installed by a different contractor." (Sept. 25, 2025 judgment entry at p. 3.)

**B. The Complaint**

{¶ 7} In their complaint filed July 22, 2024, appellees alleged that appellants removed all the original roofing materials from the property and, despite demand, did not provide any refund. Appellees further alleged that a different contractor quoted the sum of $34,000 to remove and replace the roof on the home. Their four-count complaint asserted breach of contract, violations of the Consumer Sales Practices Act ("CSPA"), negligence, and unjust enrichment.

{¶ 8} Appellants were initially in default of an answer or other response to the complaint but received leave to answer prior to an entry of default. Appellants separately answered on January 14, 2025, and the parties engaged in discovery, including exchanging initial disclosures pursuant to Civ.R. 26(B)(3).

**C. Appellees' Motion for Summary Judgment and the Trial Court's Interlocutory Ruling**

{¶ 9} On June 11, 2025, appellees filed a motion for summary judgment supported by affidavits and accompanying exhibits, including discovery responses provided by appellants. Appellants timely opposed the motion, attaching the affidavit of Al Weaver, meeting minutes of the Pepper Pike Architectural Board of Review, printouts of Pepper Pike ordinances, and other exhibits documenting Architectural Board of Review procedures. Appellees filed a reply, and more briefing followed.

{¶ 10} On September 2, 2025, the trial court entered an order granting in part and denying in part appellees' motion for summary judgment. It granted summary judgment on appellees' claim for breach of contract, finding that the "when a contractor commences work in a city where he cannot lawfully perform the work, that is a breach of the duty to perform in a workmanlike manner." It found that appellants were "liable for any damages proximately caused" by the breach. The trial court then concluded that appellees "paid $12,650 and got nothing in return, and that breach occurred because Weaver Construction breached its promise that it was able to do the work at" the Pepper Pike property.

{¶ 11} The trial court further granted summary judgment in appellees' favor, in part, on their CSPA claim, finding that Weaver Construction's failure to register as required by local ordinance violated R.C. 1345.02(A) and 1345.02(G). The trial court denied summary judgment as to the home solicitation component of appellees' claim, however, finding the record "bare of any facts that would demonstrate that there is no genuine issue of material facts about whether the contract between the parties was the fruit of a 'home solicitation sale'" as defined by statute.

{¶ 12} The trial court further denied summary judgment on appellees' negligence claim, finding no actionable duty "to perform in a workmanlike manner" where that duty was "an express part of the contract." It denied appellees' motion for summary judgment on their unjust-enrichment claim on the same basis, i.e., because "the subject matter of that claim is governed by an express contract."

{¶ 13} Finally, the trial court found that although it had determined both the "duty" and "breach" elements of the CSPA and contract claim in favor of appellees, genuine issues of material fact remained regarding their damages proximately caused by the breach of contract and violation of the statute. In short, it found that while appellees could recover the $12,650 paid to appellants, the evidence of damages premised on amounts paid to the substitute contractor was "not detailed enough to rule out any issue of material fact because the record does not show what work Weaver Construction performed and exactly what work the replacement contractor performed." It found that there were several "genuine issues of material fact . . . on the amount of any damages proximately caused[.]" The trial court likewise found that the same fact issues precluded a calculation of CSPA damages at the summary-judgment stage.

{¶ 14} Finally, the trial court found that there was a genuine issue of fact concerning Al Weaver's personal liability for any CSPA violations.

## D. Trial to the Bench with an Advisory Jury Pursuant to Civ.R. 39(C)(1)

{¶ 15} The parties waived trial by jury. The case proceeded to a bench trial with a Civ.R. 39(C)(1) advisory jury beginning September 8, 2025. Trial court journal entries indicate that the trial took place over three days, i.e., September 8, 9, and 10. This court has not been provided with a transcript of the trial, the parties' trial exhibits, an App.R. 9(C) statement, or an App.R. 9(D) agreed statement of the proceedings.

{¶ 16} After trial concluded, the trial court docketed an entry indicating that the jury had deliberated and returned interrogatories and verdict forms. It marked the matter "heard and submitted" and stated that a judgment entry would be forthcoming.

### E. The Trial Court's Final Judgment Entry

{¶ 17} The trial court docketed an entry captioned "final judgment entry upon a bench trial" on September 25, 2025. The trial court explicitly structured its opinion as findings of fact and conclusions of law. Its findings included that Weaver Construction was required by ordinance to register as a contractor to do business in Pepper Pike but had failed to do so, that neither Weaver Construction nor the appellees had applied for and received a permit from Pepper Pike's Architectural Board of Review as required by ordinance, and that for these reasons a Pepper Pike building inspector shut down the job site the day construction began. It further found that "[b]y that point, a significant portion of the old roof had been removed and some of the new material had been installed." The trial court further found that while Weaver Construction subsequently registered as a contractor, the Architectural Board of Review never approved the material selected for the job, that "Weaver Construction left the job site[,]" and that "a permissible shingle roof was ultimately installed by a different contractor."

{¶ 18} In its conclusions of law, the trial court noted that it had entered summary judgment in appellees' favor as to the "breach" elements of their contract claim but had left causation, damages, and aspects of the CSPA claim for trial:

> That summary judgment, however, was almost certainly not a final appealable order under R.C. 2505.02 because *it did not resolve the causation and damages elements of the breach of contract claim, nor did it resolve the CSPA claims.* Still, *the evidence at trial* did nothing to persuade the court, *as a finder of fact in a non-jury trial*, that Weaver Construction did not breach its promise to perform in a workmanlike duty [sic, manner] by never bothering to verify whether it was legally able to work as a contractor in Pepper Pike, *thus the breach found as a matter of law on summary judgment is also found as a matter of fact on the trial evidence of record.*

(Emphasis added.) After a brief diversion to explain that its conclusions on breach of contract differed from those of the advisory jury, the trial court found: "Ultimately, based upon all of the evidence of record," Weaver construction had "violated the contractual duty to perform in a workmanlike manner." It deferred its discussion of the "elements of causation and damages" for later in its opinion.

{¶ 19} With respect to appellees' CSPA claim, the trial court found that Weaver Construction had committed a per se deceptive trade practice by failing to register with Pepper Pike. It further found that Weaver Construction violated the CSPA by failing to provide a receipt for the deposit appellees provided.

{¶ 20} The trial court concluded, consistent with the advisory jury, that the receipt violation "was not a proximate cause of economic loss to the plaintiffs." It found, however, that appellees proved both proximate cause and damages with respect to the CSPA failure-to-register claim. For example, it found that one purpose of Pepper Pike's registration ordinance was "to ensure that the contractor is conversant with Pepper Pike's building codes." It then found that "Weaver Construction had no idea that construction which 'affects the exterior appearance' of a house could only be done" upon approval by the Architectural Board of Review.

{¶ 21} The trial court concluded that Weaver Construction was prevented from performing the promised work "by its own neglect of the registration ordinance, because the act of registering would have provided some assurance that the defendants knew that the project required permission from the Board." It continued:

> This is true even in the face of Weaver Construction's argument to the effect that the breach of the contract was caused by Kogan because she is the one who asked Weaver to install a roof — red in color and made of metal with exposed fasteners — that the city would never have approved even if the parties had gone to the Board before beginning construction. If Weaver Construction had been registered in Pepper Pike and familiar with its procedures, then Kogan — with or without assistance from Weaver Construction — would have had the chance to go to the Board, and her choice of materials would have been disapproved before any money was spent or work was started. In short, the ultimate rejection by Pepper Pike was precipitated by Weaver Construction's intentional decision to ignore Pepper Pike's ordinances.

{¶ 22} Upon finding that Weaver Construction had breached the contract and committed a per se violation of the CSPA, the court further found, "*as a matter of fact*, that both breaches proximately caused damages to the plaintiffs." (Emphasis added.)

{¶ 23} Turning to damages, the trial court noted the $12,650 deposit for which appellees "got nothing in return directly from Weaver Construction." It noted, however, that "[t]he trial evidence . . . did reveal that Kogan was paid $10,000 under a performance bond[.]" The trial court ultimately concluded that payment on the bond functioned as mitigation but left $2,650 still owing in contract damages.

{¶ 24} The trial court found the same damages applied to the CSPA violations. It explicitly relied on evidence adduced at trial:

On the CSPA, the plaintiffs would never have given Weaver Construction any money if the contractor had complied with the registration and permit process set out in the Pepper Pike ordinances because *the trial evidence that the city would never have approved the chosen materials was convincing*. But because Weaver Construction ignored its obligations under the ordinance, the plaintiffs lost the chance to either enter into a completely different contract with another contractor or to amend the contract with Weaver Construction to conform with the ordinances, including the Board's review process. As a result, the plaintiffs lost the same compensatory damages of $2,650 incurred by the breach of contract.

(Emphasis added.) The trial court rejected appellees' request for treble damages under R.C. 1345.09(B) and further rejected any claim for noneconomic damages under R.C. 1345.09(A). With respect to the latter, it noted the lack of any claim of intangible loss and that "[t]here was little, if any, testimony on the mental anguish inflicted on the plaintiffs by the defendants' conduct." The trial court specifically awarded only economic damages of $2,650.

{¶ 25} The trial court found an award of attorney fees appropriate, as authorized by R.C. 1345.09(F)(2). It found:

Here, Weaver Construction knowingly proceeded to take on a construction job in Pepper Pike without registering there as a contractor, without obtaining a building permit (or assuring itself that the homeowner had procured a permit), and without undertaking the required process before the Architectural Board of Review, and attorney's fees may therefore be awarded under R.C. 1345.09(F)(2).

{¶ 26} Next, the trial court cited Eighth District authority and found Al Weaver personally liable, along with Weaver Construction, for damages stemming from the CSPA violation, explaining that its conclusion rested "not on a traditional claim of piercing the corporate veil[]" but instead on liability of corporate officers under the CSPA for their personal actions.

{¶ 27} The trial court entered final judgment against Weaver Construction for breach of contract in the compensatory amount of $2,650 and against appellants jointly and severally on the CSPA violations in the compensatory amount of $2,650 plus attorney fees of $21,692. The trial court referenced only "Plaintiffs' trial exhibit H" in awarding fees.

{¶ 28} This timely appeal followed.

## F. The Record on Appeal

{¶ 29} While the record on appeal in this matter includes the parties' filings and the exhibits to those filings (e.g., exhibits attached to the complaint and the exhibits accompanying the parties' summary judgment briefs), it does not contain either a transcript of the three-day trial or any of the exhibits offered and admitted at trial. In their introduction to the statement of facts in their opening briefs, appellants write:

> Weaver Construction and Weaver have not ordered and filed a transcript of the trial. This case was tried to the bench, an [sic] the Trial Court Verdict attempted to summarize the facts presented at trial. So, no need for the transcript in this appeal. In that regard, the parties, for purposes of this appeal, are constrained to the filings with the trial court with respect to the SJ Motion, the actual SJ Ruling, the admitted exhibits at trial and the Trial Court Verdict factual findings. In that regard, the following are the facts for purposes of this appeal gained from those documents.

(Appellants' brief at p. 8.)

## II. Assignments of Error

{¶ 30} Appellants present four assignments of error for our review:

Assignment of Error No. 1.

The doctrine of unclean hands and/or estoppel should bar any recovery by the Appellees.

Assignment of Error No. 2.

The accidental, temporary and technical failure to register as a contractor is not even remotely the proximate cause of any damages to the Appellees.

Assignment of Error No. 3.

Even if there was a technical CSPA violation, there is no personal liability for Weaver.

Assignment of Error No. 4.

The award of attorney fees for any technical CSPA violation is an abuse of discretion, and is not supported by the required proof.

{¶ 31} We find no merit to appellants' assignments of error.

## III. Analysis

### A. The Absence of a Complete and Adequate Record

{¶ 32} We noted above that the record on appeal contains no transcript of the three-day trial and none of the exhibits offered and admitted at trial. Nor is there an App.R. 9(C) statement of the evidence or proceedings or an App.R. 9(D) agreed statement. The absence of these record materials is essentially dispositive as to appellants' four assignments of error.

{¶ 33} As appellants, Weaver Construction and Al Weaver were "responsible for providing this court with the complete record of the facts, testimony and evidentiary matters necessary to support [their] assignment[s] of error so that we can properly evaluate the trial court's decision." *Pedra Properties, LLC*, 2015-Ohio-5427, at ¶ 15 (8th Dist.), citing App.R. 9, *Urban Partnership Bank v. Mosezit*

*Academy, Inc.*, 2014-Ohio-3721, ¶ 20 (8th Dist.), and *Sagert v. Elden Props. L.P.*, 2008-Ohio-1861, ¶ 17 (6th Dist.). This obligation also "includes the exhibits that were submitted to the trial court." *Urban Partnership Bank* at ¶ 20, citing *Freedom Mtge. Corp. v. Petty*, 2011-Ohio-3067, ¶ 68 (8th Dist.) and App.R. 9(A). This duty rests with appellants because they "bear[] the burden of showing error by reference to matters in the record." *Pedra Properties, LLC* at ¶ 15, citing App.R. 9(B), 12(A)(2), and 16(A).

{¶ 34} "Where the record has no transcript or an appropriate substitute for the transcript under App.R. 9(C) or (D), the appellate court 'must presume regularity in the proceedings on any finding of fact made by the trial court.'" *Pedra Properties, LLC*, at ¶ 15, quoting *Calabrese v. Zmijewski*, 2006-Ohio-2322, ¶ 10 (8th Dist.), citing *Knapp v. Edwards Laboratories*, 61 Ohio St.2d 197 (1980). More specifically, "[i]n the absence of evidence that is necessary to resolve an assignment of error, a reviewing court must presume the regularity of the trial court's proceedings and affirm the trial court's judgment." *Urban Partnership Bank* at ¶ 20, citing *Tabbaa v. Raslan*, 2012-Ohio-367, ¶ 10-12 (8th Dist.). In such cases, "the reviewing court has nothing to pass upon and thus, as to those assigned errors, the court has no choice but to presume the validity of the lower court's proceedings, and affirm." *Knapp* at 199. *See also K&D Mgt. LLC v. Marshall*, 2025-Ohio-1736, ¶ 12 (8th Dist.); *In re D.B.*, 2025-Ohio-1371, ¶ 14 (8th Dist.). "This means that we must 'presume that the trial court considered all the evidence and arguments raised' and that sufficient evidence was presented to support the trial court's decision." *V.C.*

*v. O.C.*, 2021-Ohio-1491, ¶ 65 (8th Dist.), quoting *Miranda v. Saratoga Diagnostics*, 2012-Ohio-2633, ¶ 26 (8th Dist.).

{¶ 35} Here, as in *Pedra Properties, LLC*, appellants contend that no transcript is required because their appeal is based on purely legal issues. In that case, this court agreed that it could review purely legal issues even "in the absence of a transcript or transcript alternative[.]" *Pedra Properties, LLC* at ¶ 16. It further observed, however, that the case before it required it to apply the governing law "*to the underlying facts* in order to determine the merits" of the appeal and that "[t]he trial court's factual findings are integral to the evaluation of the legal error [appellant] claims the trial court made." (Emphasis added.) *Id*. This court ultimately applied the presumption of regularity and relied on the trial court's specific findings in affirming the trial court's judgment. *Id*. at ¶ 23. Here, we are likewise required to apply the law to the underlying facts as found by the trial court. As to those facts, we likewise presume regularity.

{¶ 36} We reject appellants' contention that we can rely on summary judgment submissions or exhibits attached thereto to review the trial court's final judgment. The trial court granted only partial summary judgment. It then proceeded to hold a three-day bench trial with an advisory jury. Both sides agree that the trial court's summary-judgment ruling was interlocutory and not a final, appealable order. "An interlocutory order is subject to revision by the trial court at any time prior to the entering of a final judgment in the case[,]" and "[o]nce a final judgment is entered, all interlocutory orders are merged into the final judgment of

the court and become appealable." (Emphasis added.) *Marc Glassman, Inc. v. Fagan*, 2006-Ohio-5577, ¶ 11 (8th Dist.), citing Civ.R. 54(B), *Kocijan v. S & N*, 2002-Ohio-3775 (8th Dist.), and *MacConnell v. Safeco Property*, 2006-Ohio-2910 (2d Dist.). Indeed, "an interlocutory order, such as granting partial summary judgment, is subject to" reconsideration prior to final judgment. *Assunta Rossi Personalty Revocable Living v. Keehan*, 2023-Ohio-3710, ¶ 11 (8th Dist.), citing *Maddox Def., Inc. v. GeoData Sys. Mgmt.*, 2019-Ohio-1778, ¶ 74 (8th Dist.), citing *Pitts v. Ohio Dept. of Transp.*, 67 Ohio St.2d 378 (1981). *See also Hoenigman v. Ruiz*, 2021-Ohio-2029, ¶ 11 (8th Dist.) (reiterating the same rule in the context of a grant of partial summary judgment). Compare *Renner, Otto, Boisselle & Sklar, L.L.P. v. Estate of Siegel*, 2015-Ohio-1839, ¶ 23 (8th Dist.) (de novo review of ruling on partial summary judgment on appeal where trial court had not subsequently proceeded to trial).

{¶ 37} Here, even though the trial court's grant of partial summary judgment merged into the final judgment and became reviewable, appellants are still faced with the final judgment actually entered, which to a very large degree reconsidered aspects of the summary-judgment decision based on evidence elicited at trial. The final judgment is explicit in this respect. It was not merely an adoption of the Civ.R. 56 ruling, but rather revisited that ruling in light of trial evidence. After a three-day bench trial with an advisory jury, the trial court made detailed findings with respect to breach, proximate cause, damages, knowledge, personal liability, and attorney fees. It even wrote that the breach previously found at the summary-judgment stage

was "found as a matter of fact on the trial evidence of record." Appellants cannot challenge those findings without providing this court with the trial evidence, i.e., the transcript of proceedings and admitted exhibits.

{¶ 38} Appellants therefore cannot avoid the requirement of a trial transcript by reframing this as an appeal from a summary judgment ruling. The case proceeded to a bench trial, and the trial court made independent findings based on trial evidence. Appellants even repeatedly refer in their brief to purported trial evidence. Footnote 4 of their opening brief, for example, refers to what "the trial facts showed" and even claimed that specific exhibits "clearly show that the [Architectural Board of Review] was never going to approve a red metal roof[.]" At page 9 of their brief, appellants refer to meeting minutes identified as exhibit No. 11. They later refer to exhibit No. 12, which they claim proves the date that Weaver Construction registered as a contractor with Pepper Pike. They reference exhibit No. 6, purportedly an order to stop work. Pages 12-13 of their opening brief refer to exhibit Nos. 7B, 12, 9A, 9B, 8, and 25. Not one of these exhibits is contained in the appellate record.

{¶ 39} Moreover, even if this court had the exhibits admitted into evidence at trial, the lack of a transcript leaves us with no way to determine how those exhibits were used to support, contradict, or otherwise explain trial testimony. In *V.C.*, 2021-Ohio-1491, the appellant argued that certain exhibits purportedly offered at a hearing, along with the trial court's "docketing statements," were sufficient for this court's review. *Id*. at ¶ 67. This court rejected that contention:

> [T]he trial court's "docketing statements" do not demonstrate what evidence was presented below. And without the transcript, we do not know which of the parties' "tendered" exhibits were admitted into evidence at the hearing. Further, without access to a transcript of the testimony presented at the hearing, *including any testimony that may have been given explaining the parties' exhibits or supplementing, contradicting or modifying information contained in those exhibits*, we cannot say that any of the trial court's factual findings are against the manifest weight of the evidence.

(Emphasis added.) *Id*. at ¶ 67.

**{¶ 40}** In light of these fundamental precepts, we disagree with appellants' framing of the consequences of their failure to file a trial transcript and exhibits. While both sides, and this court, are indeed "constrained" to the limited paper record (to employ appellants' term), this does not create a stalemate. The missing record materials were appellants' responsibility and are now appellants' problem. There is no cross-appeal, and appellees are not required to demonstrate regularity. Appellants alone have the burden of demonstrating prejudicial error by reference to the record. The absence of the record evidence necessary to evaluate their assignments of error requires this court to presume the regularity of the trial court's proceedings, i.e., we must accept the trial court's findings as correct and presume that the evidence supported them.

**{¶ 41}** To the extent an assignment of error presents a purely legal issue capable of resolution from the existing App.R. 9(A) record, the absence of a transcript would not be dispositive. All of appellants' remaining assignments of error, however — their challenges to the trial court's findings and conclusions regarding the affirmative defense of unclean hands, causation, damages, knowledge,

personal liability, and the award of attorney fees — are inextricably tied to trial evidence. Those issues cannot be resolved, at least not in appellants' favor, on an incomplete record.

**B. First Assignment of Error**

{¶ 42} In their first assignment of error, appellants argue that the doctrine of unclean hands or equitable estoppel should bar any recovery by appellees. We find no merit to this assignment of error.

{¶ 43} The doctrine of unclean hands "concerns grossly inequitable behavior in the underlying transaction which is the subject matter of the suit. . . . A party's conduct in the litigation itself may cause it to suffer sanctions, but it will not invoke the 'clean hands' doctrine." *N. Coast Cookies, Inc. v. Sweet Temptations, Inc.*, 16 Ohio App.3d 342, 344, fn. 1 (8th Dist. 1984). This court has described "[t]he unclean hands doctrine is a defense against claims in equity[]" and has stated that it "requires a showing that the party seeking relief engaged in reprehensible conduct with respect to the subject matter of the action." *Downie-Gombach v. Laurie*, 2015-Ohio-3584, ¶ 46 (8th Dist.). Similarly, a core requirement for invocation of equitable estoppel is a factual misrepresentation that "induces actual reliance" by the opposing party. *N. Frozen Foods, Inc. v. Farro*, 2019-Ohio-5344, ¶ 25 (8th Dist.). *See also Barcy v. St. Vincent Charity Med. Ctr.*, 2022-Ohio-1064, ¶ 62 (8th Dist.).

{¶ 44} Appellants' arguments here are unusual because they relate not to circumstances surrounding the underlying transaction or to any alleged

representations that they relied upon, but rather to allegations of bad behavior by appellees' counsel during litigation, which would more typically be framed as justification for sanctions. We nevertheless address their arguments.

{¶ 45} Appellants first contend that appellees, through counsel, misled the trial court in summary judgment briefing by failing to disclose payment on a bond in at least partial satisfaction of any claimed damages. In their June 11, 2025 motion for summary judgment, however, appellees expressly referenced payment on the bond. It is likewise mentioned in counsel's affidavit filed the same day. The affidavit even includes a release from the bonding company.

{¶ 46} Appellees' motion for summary judgment, the pertinent affidavit, and the referenced release all specified payment on the bond in the amount of $12,650. The trial court's final judgment entry, however, states that $10,000 was collected on the bond, and this is the figure referenced by both appellants and appellees on appeal. This discrepancy actually highlights that the trial court apparently heard evidence on this issue — evidence that we cannot review because of the lack of a transcript and exhibits. Indeed, appellants contend in their brief that this purported "fraud by omission" was fully revealed "only *at trial*[.]" (Emphasis in original.) (Appellants' brief at p. 13.) They continue: "[I]t was not until the parties were in trial in this matter that this functional fraud was discovered." (Appellants' brief at p. 14.)

{¶ 47} More fundamentally, while appellants argue that these affirmative defenses were preserved by being listed in their answers and that the "functional

fraud" was discovered during trial, they provide nothing demonstrating that either defense was argued to the trial court and ultimately rejected. Ohio courts distinguish between pleading a defense and actually placing it before the trial court for decision. *See, e.g., Murgu v. Lakewood City School Dist., Bd. of Edn.*, 2018-Ohio-4643, ¶ 12-13 (8th Dist.), citing *O'Brien v. Olmsted Falls*, 2008-Ohio-2658, ¶ 13 (8th Dist.).

{¶ 48} "In general, affirmative defenses must be 'timely asserted *and maintained*,' meaning the party seeking to benefit from a doctrine has the obligation to raise and argue it, not merely set it forth in an answer." (Emphasis added.) *Cosgrove v. Omni Manor*, 2016-Ohio-8481, ¶ 45 (7th Dist.), quoting *Dworning v. Euclid*, 2008-Ohio-3318, ¶ 11 and *Jones v. Chagrin Falls*, 77 Ohio St.3d 456 (1997), syllabus. "In other words, the answer is not self-executing." *Cosgrove* at ¶ 46, citing *Parkstone Capital Partners v. Solon*, 2013-Ohio-3149, ¶ 20 (8th Dist.). In *Cosgrove*, the employer's answer in a workers' compensation case raised, as an affirmative defense, that the trial court lacked jurisdiction over a condition not adjudicated administratively. Relying on the precepts above, the Seventh District explained that even though raised in the answer,

> this defense was not "maintained" thereafter. The employer filed no pretrial motion. For instance, the employer did not seek partial summary judgment under Civ.R. 56 as to this medical condition. The employer did not seek a ruling in limine on the evidence of herniation/extrusion. The employer did not raise the issue at trial during presentation of testimony on herniation and extrusion or during closing arguments. No objection was raised to the jury instructions or the jury verdict forms containing this medical condition. The employer waited to raise the issue until after trial in its objections to the

> magistrate's decision which memorialized the jury verdict on this medical condition.
>
> . . .
>
> The employer forfeited the argument (about which medical conditions could be submitted to the jury) by allowing the case to proceed through trial without properly raising the matter.

*Cosgrove* at ¶ 47 and 53. *See also Hollish v. Maners*, 2011-Ohio-4823, ¶ 26 (5th Dist.) (declining to consider affirmative defenses preserved in an answer but not addressed at the trial-court level during bench trial); *Buckeye Hoya, LLC v. Brown Gibbons Lang & Co. LLC*, 2023-Ohio-2177, ¶ 29 (8th Dist.); *Gallagher v. Cleveland Browns Football Co.*, 74 Ohio St.3d 427, 433 (1996). In short, affirmative defenses raised in an answer but not further prosecuted are "effectively waived." *Leibson v. Ohio Dept. of Mental Retardation & Developmental Disabilities*, 84 Ohio App.3d 751, 761 (8th Dist. 1992).

{¶ 49} Thus, even if these defenses of unclean hands or estoppel were properly pleaded, without a transcript we cannot determine whether, or to what extent, those defenses were argued, supported by evidence, or otherwise maintained, especially where the trial court's final judgment is silent as to these defenses. Given the trial court's "silence on the issue, it would be highly speculative to construe" its final judgment entry "as an implicit ruling" on these affirmative defenses. *Lycan v. Cleveland*, 2016-Ohio-422, ¶ 25.

{¶ 50} Appellants' first assignment of error is overruled.

## C. Second Assignment of Error

{¶ 51} In their second assignment of error, appellants argue that the failure to register as a contractor with Pepper Pike "is not even remotely the proximate cause of any damages" to appellees. They argue that a plaintiff is required to "prove that any CSPA violation or breach is the proximate cause of identifiable damages." (Appellants' brief at p. 14.) They further argue that "[g]laringly absent from the Trial Court Verdict is any objective or rational relation of the failure-to-register conduct to any damages suffered" by appellees. (Appellants' brief at p. 14.)

{¶ 52} Appellants are correct that appellees were required to prove that any violation of the CSPA was the proximate cause of damages. R.C. 1345.02(G) makes "the failure of a supplier to obtain or maintain any registration, license, bond, or insurance required by state law or local ordinance for the supplier to engage in the supplier's trade or profession . . . an unfair or deceptive act or practice." R.C. 1345.09(A) allows recovery of, inter alia, "actual economic damages[.]" R.C. 1345.09(G) defines that phrase as "direct, incidental, or consequential pecuniary losses *resulting from* a violation of Chapter 1345 of the Revised Code." (Emphasis added.)

{¶ 53} Appellants' contentions regarding the trial court's final judgment, however, are incorrect. The trial court made specific, fact-based proximate cause and damages determinations after trial. While appellants attempt to characterize proximate cause as a purely legal question subject to de novo review, "[t]he question of proximate cause is ordinarily one of fact[.]" *Kehrer v. McKittrick*, 176 Ohio St.

192, 195 (1964). It becomes a question of law only "where there is no conflict in the evidence." *Id.* Here, the trial court found "as a matter of fact" that the failure to register (as well as the breach of contract) proximately caused damages to appellees. It concluded that if Weaver Construction had not violated the CSPA — i.e., if it had been registered — appellees would have known "before any money was spent or work was started[]" that the Architectural Board of Review would not approve the roofing materials. "In short," the trial court wrote, "the ultimate rejection by Pepper Pike was precipitated by Weaver Construction's intentional decision to ignore Pepper Pike's ordinances."

{¶ 54} Appellants' remaining arguments are principally fact-based rather than legal. At the very least, they would require the application of proximate-cause principles to specific facts, including, but not limited to, the trial court's inference that one purpose of Pepper Pike's ordinance requiring contractor registration is "to ensure that the contractor is conversant with Pepper Pike's building codes," including the requirement to seek approval from the Architectural Board of Review for certain renovations. In light of that finding, appellants' argument that Weaver Construction is blameless because the roof never would have been approved by the Architectural Board of Review misses the trial court's point. The trial court found, based on the evidence at trial, that if Weaver Construction had been properly registered it would have discovered that fact before money was paid, materials were delivered, and part of the old roof was removed.

{¶ 55} With no transcript, we have nothing to review to determine whether the trial court's findings, including the trial court's ultimate proximate-cause determination, were supported by the evidence.[2] Instead, as explained above, we presume regularity based on the absence of a transcript or App.R. 9 alternative. Appellants' second assignment of error is overruled.

## D. Third Assignment of Error

{¶ 56} In their third assignment of error, appellants argue that even if there was a CSPA violation, Al Weaver is not personally liable. We find this assignment of error meritless.

{¶ 57} Under the CSPA,

an officer of a corporation is individually liable for each violation of the CSPA in which he personally participates. *Stultz v. Artistic Pools, Inc.*, Summit App. No. C.A. 20189, 2001 Ohio 1420, ¶ 4. Liability also exists for actions where "the officer took part in the commission of the act, specifically directed the particular act to be done, or participated or cooperated therein." *Grayson v. Cadillac Builders, Inc.*, (Sept. 14, 1995), Cuyahoga App. No. 68551, 1995 Ohio App. LEXIS 3954, citing *State ex rel. Fisher v. Am. Courts, Inc.* (1994), 96 Ohio App.3d 297, 644 N.E.2d 1112. The officer's "liability flows not from his status as * * * an officer * * *, but from his personal actions in violating CSPA." *Inserra v. J.E.M. Bldg. Corp.* (Nov. 22, 2000), Medina App. No. 2973-M, 2000 Ohio App. LEXIS 5447 at *17, citing *Sovel v. Richardson* (Nov. 15, 1995), Summit App. No. 17150, 1995 Ohio App. LEXIS 5076. This court noted that the CSPA "does not change the existing common law of tort, nor does it change the common law rule with respect to piercing the corporate veil. A corporate officer may not be held liable merely by virtue of his status as a corporate officer. It does, however, create a tort

---

[2] We further decline appellants' invitation to "follow the advisory mandate of the jury and conclude that any CSPA violation was not the proximate cause of any damages, and that there was also no breach of contract by Weaver Construction." (Appellants' brief at p. 16.) In "a bench trial with an advisory jury pursuant to Civ.R. 39(C)(1) . . . [t]he advisory jury [is] not the factfinder[.]" *Rayco Mfg. v. Murphy, Rogers, Sloss & Gambel*, 2019-Ohio-3756, ¶ 74 (8th Dist.).

which imposes personal liability upon corporate officers for violations of the act performed by them in their corporate capacities." *Grayson*, 1995 Ohio App. LEXIS 3954 at *9, fn. 1.

*Burns v. Spitzer Mgt.*, 2010-Ohio-5369, ¶ 32 (8th Dist.). This court quoted this excerpt from *Burns* in its entirety in *Garber v. STS Concrete Co., L.L.C.*, 2013-Ohio-2700, ¶ 28 (8th Dist.), a key case cited by appellants.

{¶ 58} Appellants misunderstand *Garber*, however, arguing that it held that "a plaintiff must identify and show that an individual corporate officer personally committed specific 'knowingly [sic] and unconscionable' acts in order to be personally liable in [sic] the CSPA." (Appellants' brief at p. 17.) *Garber* referenced that requirement in discussing violations of R.C. 1345.03, entitled "Unconscionable consumer sales acts or practices," and only to contrast it with the less stringent standard under R.C. 1345.02, the statute at issue in this case, entitled "Unfair or deceptive acts or practices." In *Garber*, this court stated that "a requirement for *knowingly* committing a violation of the CSPA in order to subject one to individual liability is not found in R.C. 1345.02." (Emphasis in original.) *Garber* at ¶ 30. *Garber* relied in large part on *Grayson v. Cadillac Builders*, 1995 Ohio App. LEXIS 3954 (8th Dist. Sept. 14, 1995). In that case, this court held that "proof of knowledge is a requirement to prove an unconscionable act under R.C. 1345.03[,]" but "proof of intent is not required to prove deception under R.C. 1345.02." *Id*. at *10. In other words, appellants' reliance on *Garber* is wholly misplaced.

{¶ 59} The trial court's final judgment, based on "[t]he evidence at trial," included the factual finding that no one apart from Al Weaver acted on behalf of

Weaver Construction with respect to the transaction at issue and that Al Weaver was therefore personally liable for the CSPA violation. Any argument to the contrary depends on the trial evidence. Without the transcript, we must presume the record supports the trial court's finding.

{¶ 60} Appellants' third assignment of error is overruled.

### E. Fourth Assignment of Error

{¶ 61} In their fourth assignment of error, appellants argue that the trial court's award of attorney fees in connection with the CSPA violation was an abuse of discretion and not supported by the required proof. We find no merit to this assignment of error.

{¶ 62} R.C. 1345.09(F)(2) of the CSPA provides, in pertinent part: "The court may award to the prevailing party a reasonable attorney's fee limited to the work reasonably performed, if . . . [t]he supplier has knowingly committed an act or practice that violates this chapter." The Ohio Supreme Court has held that "'knowingly' committing an act or practice in violation of R.C. Chapter 1345 means that the supplier need only intentionally do the act that violates the Consumer Sales Practices Act. The supplier does not have to know that his conduct violates the law for the court to grant attorney fees." *Einhorn v. Ford Motor Co.*, 48 Ohio St.3d 27, 30 (1990).

{¶ 63} In *Charvat v. Ryan*, 2007-Ohio-6833, the Ohio Supreme Court reaffirmed its holding in *Einhorn* "that to establish a knowing violation of R.C. 1345.09, for an award of attorney fees, a plaintiff need prove only that the defendant

acted in a manner that violated the CSPA and need not prove that the defendant knew that the conduct violated the law." *Id.* at ¶ 27. It further stated, however, that "[t]he trial court has the discretion to determine whether attorney fees are warranted under the facts of each case." *Id.* Accordingly, "[a]n award of attorney fees under R.C. 1345.09(F)(2) to a prevailing party is not mandatory, but within the discretion of the trial court, subject to review only for an abuse of that discretion." *Favors v. Burke*, 2013-Ohio-823, ¶ 24 (8th Dist.), citing *Reagans v. Mountainhigh Coachworks, Inc.*, 2008-Ohio-271, ¶ 34.

{¶ 64} Appellants are correct that attorney fees are not mandated under the CSPA. *Charvat* at ¶ 24; *Reagans* at ¶ 34; *Favors* at ¶ 24. They are incorrect, however, in contending that the trial court made the legal mistake of concluding an award was mandated. Appellants contend that the trial court's decision "presumes that . . . a fee award is *automatic* if there is a CSPA violation." (Emphasis in original.) (Appellants' brief at p. 22.) This is simply incorrect. The trial court, citing *Einhorn*, specifically noted that the CSPA "gives a court *discretion* to award attorney's fees[.]" (Emphasis added.)

{¶ 65} This is why appellants' citations to cases such as *Griffin Contracting & Restoration v. McIntyre*, 2018-Ohio-3121 (12th Dist.), and *Sterling Constr., Inc. v. Alkire*, 2017-Ohio-7213 (12th Dist.), are inapposite. In *Griffin*, the Twelfth District merely held that the trial court did not abuse its discretion in declining to award attorney fees. *Griffin* at ¶ 45. Similarly, in *Sterling Constr., Inc.*, the Twelfth District wrote that it "simply cannot say the trial court abused its discretion by

finding it would be 'unequitable' to award attorney fees." *Id*. at ¶ 23. In fact, the holdings in these cases highlight the core problem with appellants' arguments in this and their remaining assignments of error. In both *Griffin* and *Sterling Constr., Inc.*, the Twelfth District found no abuse of discretion by the trial court after review of the record. We do not wish to belabor the point unnecessarily, but here we have no record of the testimony accepted and exhibits admitted at trial. In the present case, the trial court noted that it was permitted to award fees and then offered a fact-based explanation for why it was doing so. For all the reasons previously recounted, "[i]n the absence of a complete and adequate record[]" we presume the regularity of proceedings and that there was sufficient evidence to support the trial court's decision. *Thomas v. Laws*, 2016-Ohio-8491, ¶ 11 (8th Dist.).

{¶ 66} The propriety of the trial court's specific fee award — i.e., the amount of attorney fees awarded — is a closer call. Appellants are correct that the trial court's final judgment entry is sparse in that regard. The trial court awarded attorney fees in the amount of $21,692. Its only supporting reference for that sum is a footnote identifying, without description, a single trial exhibit. The Ohio Supreme Court has held that "[w]hen making a fee award pursuant to R.C. 1345.09(F)(2), the trial court must state the basis for the fee determination." *Bittner v. Tri-County Toyota, Inc.*, 58 Ohio St.3d 143, 146 (1991). It further held that "[a]bsent such a statement, it is not possible for an appellate court to conduct a meaningful review." *Id.*

{¶ 67} *Bittner* requires a trial court to first calculate the lodestar by multiplying "the number of hours reasonably expended on the case times an hourly fee[.]" *Id.* at 145. The trial court may then modify that calculation by application of certain factors. The *Bittner* Court wrote:

> These factors are: the time and labor involved in maintaining the litigation; the novelty and difficulty of the questions involved; the professional skill required to perform the necessary legal services; the attorney's inability to accept other cases; the fee customarily charged; the amount involved and the results obtained; any necessary time limitations; the nature and length of the attorney/client relationship; the experience, reputation, and ability of the attorney; and whether the fee is fixed or contingent. All factors may not be applicable in all cases and the trial court has the discretion to determine which factors to apply, and in what manner that application will affect the initial calculation.

*Id.* at 145-146. In *Phoenix Lighting Group, L.L.C. v. Genlyte Thomas Group, L.L.C.*, 2020-Ohio-1056, the Ohio Supreme Court determined that the lodestar is presumptively reasonable and that "[e]nhancements to the lodestar should be granted rarely and are appropriate when an attorney produces objective and specific evidence that an enhancement of the lodestar is necessary to account for a factor not already subsumed in the lodestar calculation." *Id.*, at paragraph one of the syllabus. *Bittner*, however, remains good law, particularly for the requirement that the trial court state its basis for the fee determination. *See Shury v. Cusato*, 2022-Ohio-4401, ¶ 62 (8th Dist.).

{¶ 68} Appellants argue that the trial court's attorney-fee award must be reversed because the court awarded a bottom-line figure without providing a more detailed lodestar analysis under *Bittner*. We acknowledge that a trial court should

state the basis for its determination of a fee award in sufficient detail to permit meaningful appellate review. In the present case, however, meaningful review is not prevented solely by the brevity of the trial court's final judgment entry. It is independently and primarily prevented by appellants' failure to provide the record necessary to review the award. The "meaningful review" requirement announced in *Bittner* assumes an appellate court has the record necessary to review the trial court's stated basis for its fee award. In that case, for example, the Ohio Supreme Court referenced exhibits and testimony, noted that the trial court "did not award either of Bittner's attorneys the fee amount requested[,]" and observed that "[t]hus, in making its final determination, the trial court apparently took into consideration other factors." *Bittner*, 58 Ohio St.3d at 146. It then concluded that even though there was presumably "sufficient evidence . . . to support the award[,]" without a stated basis for the fee determination "it is not possible to determine what factors the court considered or the weight, if any, it placed on those factors." *Id.*

{¶ 69} The trial court here plainly relied on some evidence, including but not necessarily limited to "Plaintiffs' trial exhibit H," in determining the amount of the fee award. Appellants, however, did not file a transcript of the trial or any exhibits, including the exhibit on which the trial court relied for its bottom-line fee number. Without those materials, we cannot independently review the contents of the exhibit, any testimony explaining it, any objections raised, possible stipulations, or whether the evidence supported the trial court's fee award. Moreover, this inability to conduct a meaningful review would exist even if the trial court had devoted ten or

more pages of its judgment entry to a fee analysis. In other words, even if the trial court had included a detailed lodestar calculation and explained any adjustments, this court would still be unable to determine whether the hours claimed, the hourly rates, testimony, objections, stipulations, or other evidence admitted at trial supported the trial court's calculation.

{¶ 70} Under these circumstances, remanding for a more detailed explanation of the fee calculation would not cure the central defect in this appeal. It would merely require the trial court to explain evidence that appellants have already failed to make part of the appellate record. We do not read *Bittner* as requiring reversal where the inability to conduct a meaningful review is attributable to the appellants' own failure to provide the transcript and exhibits necessary to evaluate the fee award. Instead, in the absence of a complete and adequate record, appellants cannot demonstrate that the lack of specificity in the fee award, even if erroneous under *Bittner*, was prejudicial. "[A]n appellant, in order to secure reversal of a judgment against him, must not only show some error but must also show that that error was prejudicial to him." (Cleaned up.) *In re A.Z.*, 2020-Ohio-2941, ¶ 56 (8th Dist.); *Niskanen v. Giant Eagle, Inc.*, 2009-Ohio-3626, ¶ 26; *Smith v. Flesher*, 12 Ohio St.2d 107, 110 (1967); *Low v. Ohio Historical Soc. Museum*, 2012-Ohio-6164, ¶ 6 (10th Dist.); *Preterm-Cleveland v. Yost*, 2026-Ohio-23, ¶ 30 (1st Dist.); *Logan v. Stovall*, 1986 Ohio App. LEXIS 5491, *14 (8th Dist. Jan. 30, 1986); App.R. 12(D).

{¶ 71} Appellants' fourth assignment of error is overruled.

{¶ 72} Judgment affirmed.

It is ordered that appellees recover from appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
DEENA R. CALABRESE, JUDGE

EILEEN T. GALLAGHER, P.J., and
EMANUELLA D. GROVES, J., CONCUR